The STATE of Ohio, Appellee,

v.

MEYER, Appellant.

[Cite as *State v. Meyer* (1988), 61 Ohio App.3d 673.]

Court of Appeals of Ohio,
Hamilton County.

No. C–870290.

Decided Nov. 9, 1988.

Richard A. Castellini, City Solicitor, Terrence R. Cosgrove, City Prosecutor, and Frank H. Prouty, Jr., for appellee.

Condit & Dressing Co., L.P.A., and John W. Dressing, for appellant.

Per Curiam.

This cause came on to be heard upon an appeal from the Hamilton County Municipal Court.

The defendant-appellant, Michael Meyer, stands convicted of disorderly conduct under R.C. 2917.11(A)(5), following a trial without the intervention of a jury in the municipal court. In this appeal, he seeks a discharge from the conviction, raising constitutional claims concerning the validity of the disorderly conduct statute in two of the three assignments of error given to us for review. We find it unnecessary to reach those claims, because, in our resolution of the remaining assignment, we determine that Meyer should have been granted a judgment of acquittal under Crim.R. 29, on the state of the evidence adduced at trial. On this limited, nonconstitutional ground, the judgment of conviction is reversed, and Meyer is discharged.

According to the record, the proceedings in the court below stemmed from an incident that took place outside a Planned Parenthood clinic in Cincinnati, while Meyer was among a group that had assembled to protest the clinic's practice of performing abortions. Although the protest was devoted primarily to the conventional forms of picketing, Meyer chose to express his views in a distinctive, more compelling way: with him at the scene, mounted on wheels, was an elaborately crafted display, some eight feet in height, consisting of a mannequin (representing one of the clinic's doctors) hanging from a wooden gallows, with its hands, seemingly stained with blood, bound behind its back. Atop the gallows was a sign specifically naming a doctor who was said to "kill babies."

Police arrived at the site of the protest and arrested Meyer for a violation of R.C. 2917.11(A)(5), after a resident in the neighborhood became convinced that

the display was having an adverse effect on children playing in his front yard. According to testimony given during the prosecution's case-in-chief at trial, the resident found it necessary to send the children home after at least one of them reacted with fear and agitation upon seeing the mannequin hanging from the gallows. On the basis of this and other evidence concerning the display's purpose and the response elicited by it, the prosecution argued, and the trial judge agreed, that Meyer had, within the meaning of R.C. 2917.-11(A)(5), recklessly and without justification, caused alarm to another by creating a physically offensive condition.

In the assignment of error that questions the trial judge's refusal to enter a judgment of acquittal, Meyer now points to what he considers to be a failure of proof on several essential elements of the charged offense. He asserts, *inter alia,* that there is no evidence in the record to show that he acted recklessly in using the display, and no evidence showing that the display gave rise to a physically offensive condition. Although there is nothing inappropriate about using these as reference points in an inquiry into the sufficiency of the evidentiary fundament supporting Meyer's conviction, we choose instead to focus our analysis upon the state of the evidence as it relates to another essential element of disorderly conduct as defined in R.C. 2917.11(A)(5): the commission of an act that "serves no lawful and reasonable purpose of the offender." It is in this respect, we believe, that the record clearly demonstrates a failure of proof entitling Meyer to a judgment of acquittal.

■ R.C. 2917.11(A)(5) reads, in full, as follows:

"No person shall recklessly cause inconvenience, annoyance or alarm to another, by doing any of the following: * * * Creating a condition which is physically offensive to persons or which presents a risk of physical harm to persons or property, by any act which serves no lawful and reasonable purpose of the offender."

In view of the wording of the statute, even if it is assumed here that Meyer acted recklessly to cause alarm to another by creating a physically offensive condition, his conduct is not punishable in law in the absence of a showing that it served no lawful and reasonable purpose.

■ According to the record, Meyer's stated purpose in using the display was to exercise his First Amendment right of free expression in protest of the abortions performed at the Planned Parenthood clinic. While it cannot fairly be argued that the assertion of a constitutional right is not a lawful and reasonable purpose within the contemplation of the disorderly conduct statute, the prosecution maintains that certain circumstantial evidence in the record

adequately shows that that purpose was not served in this case. We do not agree.

What the record shows unequivocally is that Meyer had picketed in the vicinity of the clinic on a number of occasions, and that on the day of his arrest, his intention was again to "demonstrate" his opposition to abortion. Toward that end, he parked his pickup truck on a side street, unloaded the display, assembled it, and pushed it "around in front of the clinic," to an area specifically designated by a pending court order as a moving picket zone. Thereafter, when the wheels on which the framework was mounted malfunctioned, he immediately moved the display to a zone separately set aside under the order for stationary picketing. All of this was done, according to Meyer's own unrebutted testimony, so that he would "comply with the judge's order and not be arrested for contempt of court."

Under these circumstances, we are convinced that there was nothing about the characteristics of the display itself that otherwise deprived it from serving Meyer's reasonable and lawful purpose to engage in a peaceful protest at the clinic. It was not obscene in a legal sense, and it did not involve the communication of something akin to "fighting words" (*i.e.*, that which by nature inflicts injury or tends to incite an immediate breach of the peace). See *Gooding v. Wilson* (1972), 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408; *Chaplinsky v. New Hampshire* (1942), 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031. Instead, Meyer's use of the display was, in our judgment, a form of symbolic expression that was not, under the full definition of disorderly conduct contained in R.C. 2917.11(A)(5), punishable as a criminal offense in this state. Cf. *Frisby v. Schultz* (1988), 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (upholding facial validity of content-neutral regulation of abortion picketing in front of private residences). Meyer was, therefore, entitled to a judgment of acquittal in the trial court, and we sustain his assignment of error that challenges the court's refusal to enter such a judgment under Crim.R. 29.

In the remaining two assignments of error presented to us, Meyer asserts that the statute under which he was convicted is unconstitutional, both on its face and as applied to the facts of this case. In view of our determination that Meyer's conviction lacks a sufficient evidentiary fundament, we do not address the merits of these assignments pursuant to the fundamental principle that a court should not rule upon constitutional claims that are not essential to the disposition of a particular controversy. See *Hall China Co. v. Pub. Util. Comm.* (1977), 50 Ohio St.2d 206, 4 O.O.3d 390, 364 N.E.2d 852; *McClung v. Bd. of Edn.* (1976), 46 Ohio St.2d 149, 75 O.O.2d 197, 346 N.E.2d 691.

The judgment of the municipal court is reversed and the defendant-appellant is ordered discharged.

*Judgment reversed.*

SHANNON, P.J., BLACK and KLUSMEIER, JJ., concur.