This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Appellant Robert Barnes (hereinafter "Barnes") appeals from the judgment of the Belmont County Court of Common Pleas finding him guilty of persistent disorderly conduct. The questions before us are whether appellant's conviction is supported by both legally sufficient evidence as well as the greater amount of credible evidence. Because we resolve both questions in the affirmative, the decision of the trial court is affirmed.
Testimony was elicited at a bench trial. On April 28, 2000, Barnes, his wife Dawn (hereinafter "Mrs. Barnes") and Lydia Cumberlidge (hereinafter "Cumberlidge") went out to eat and subsequently went to a bar. Upon returning home between 10:00 and 11:00 p.m., Mrs. Barnes went to bed while Barnes took Cumberlidge to visit her cousin. During the visit, Cumberlidge's head was severely injured causing a great deal of bleeding.
Barnes brought Cumberlidge back to his home where he pulled into the drive, honked his horn and yelled up to his wife to get his wallet so he could take Cumberlidge to the hospital. The boyfriend of a neighbor, Joey Long (hereinafter "Long") came outside and he and Barnes began arguing. Around 11:00 p.m., Officer Jason Weekley (hereinafter "Weekley") arrived at the scene. Barnes was standing on the sidewalk yelling and screaming at the neighbors. Weekley testified he believed Barnes had been drinking alcohol.
While the police were at the scene, Barnes testified that he received a blow to the head from Long and needed to be taken to the hospital. Shortly after, an ambulance came and took Barnes and Cumberlidge to the hospital. Upon returning home from the hospital, Barnes reported to the police that his dog had been taken. Weekley returned to the scene to investigate. Weekley testified that at this time he again instructed Barnes to cease his conduct and stay away from the neighbors. Approximately one half hour after the second incident, Weekley was dispatched to the scene for a third time in response to a complaint from the neighbors. Weekley observed Barnes standing on a porch. When Barnes saw the officer, he ran inside the residence.
Virginia Leasure (hereinafter "Virginia"), one of Barnes' neighbors, testified that Barnes caused a disturbance by using profanity and yelling while outside her residence several times that night. Virginia stated that Barnes' conduct annoyed her and inconvenienced her. Rhonda Leasure (hereinafter "Rhonda") likewise took the stand and testified that Barnes had pounded on the windows, yelled, and used profanity, even after she asked him to stop and go home. Rhonda further testified that Weekley had to respond to the disturbances on more than one occasion. Mrs. Barnes similarly admitted that Barnes was drunk on the evening in question, he was outside yelling, blowing the car horn, and using profanity.
Finally, Barnes took the stand and testified that he had been drinking but denied being drunk. He admitted to blowing the car horn but disagreed that he was screaming or pounding on windows. Barnes similarly denied being given warnings by Weekley. Cumberlidge testified on behalf of Barnes and stated both that he had been drinking and that he was blowing the car horn. However, she denied that he was drunk and disagreed that he was screaming or pounding on windows. After hearing all the evidence, the trial court found Barnes guilty of persistent disorderly conduct. It is from that judgment that Barnes now appeals.
Barnes first assignment of error alleges:
 "The Trial Court Erred in Finding the Defendant Guilty of Persistent Disorderly Conduct in that There Was No Evidence that the Conduct was Persistent, Nor Was There Any Evidence that He Had Been Told to Desist From Any Disorderly Conduct."
In essence, this argument questions whether the evidence is legally sufficient to sustain a verdict. This court has previously delineated the appropriate standard for reviewing the sufficiency of the evidence inState v. Fullerman (August 14, 2001), Mahoning App. No. 99 CA 314, unreported:
 The Ohio Supreme Court in State v. Thompkins (1997), 78 Ohio St.3d 380, 386 defined sufficiency as `* * * a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed. 1990) 1433. * * *. In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486.
 When reviewing a trial court's decision on the basis of sufficiency of the evidence, the appellate court must determine whether the state's evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt, thereby supporting a conviction. State v. Jenks (1990), 61 Ohio St.3d 259, syllabus paragraph two. As articulated by Justice Cook in her concurring opinion in Thompkins, in essence, the question to be resolved when challenging the legal sufficiency of a verdict is to determine whether the state has met its burden of production." Id. at 8.
The relevant inquiry on appeal is, after reviewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 273. It is not the function of the appellate court to substitute its judgment for that of the factfinder. Jenks, 61 Ohio St.3d at 279. The weight to be given the evidence and the credibility of the witnesses are primarily issues for the trier of fact. State v. Ballew (1996), 76 Ohio St.3d 244,249.
Barnes contends that his actions, as outlined above, do not constitute "persistent" disorderly conduct in violation of R.C. 2917.11(A)(1) and (E) as he did not receive adequate warning to cease and desist his behavior. In relevant part, R.C. 2917.11(A)(1) provides:
 "* * * No person shall recklessly cause inconvenience, annoyance, or alarm to another, by * * * engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior * * *."
R.C. 2917.11(E) delineates the categories of disorderly conduct and the "persistent" aspect of the charge.
 "(E) Whoever violates this section is guilty of disorderly conduct. Except as otherwise provided in this division, disorderly conduct is a minor misdemeanor. If the offender persists in disorderly conduct after reasonable warning or request to desist * * * disorderly conduct is a misdemeanor of the fourth degree."
Barnes does not appear to challenge the fact he was guilty of disorderly conduct. Instead, Barnes contends the police came to his home on three separate and distinct occasions. Consequently, his behavior could not be deemed persistent. He cites to City of Warren v. Patrone
(1991), 75 Ohio App.3d 595 in support of this proposition, asserting the facts are identical to the case at bar. Barnes' reliance upon Petrone is misplaced.
In Patrone, the defendant approached a meter maid claiming he had something to show her. The meter maid asked him to "leave her alone". The defendant complied but returned two hours later only to throw a parking ticket in her face stating, "Here, this is what people think of your asshole tickets, asshole." Shortly thereafter, the defendant walked away from the meter maid. The next day uniformed police officers approached the defendant and advised him that they had a warrant for his arrest. One of the officers testified that the defendant stated, "I'm not going anywhere." The defendant began to leave the scene at which time the officers grabbed and handcuffed him. The defendant was charged and convicted of persistent disorderly conduct.
The Patrone court opined:
 "* * * In order to persist in disorderly conduct, the offender must be actively conducting himself in a disorderly manner, and after being warned or requested to desist, the offender continues the offensive behavior. Citing Niles v. Kostur (Dec. 15, 1990), Trumbull App. No. 89-T-4318, unreported, at 6 and 7."
In Patrone, the court's initial determination that none of defendant's behavior constituted disorderly conduct precluded a conviction for persistent disorderly conduct. Although the adequacy of the officer's request to cease and desist was not dispositive in Patrone, the court did address the issue, and we find the court's reasoning to be instructive. The court stated the only evidence presented on the issue of a reasonable warning was that the meter maid asked the defendant to leave her alone. Thus, the request did not constitute a reasonable warning.Id. at 599.
The Patrone court focused on the defendant's conduct and the inadequacy of the warning, not the time that had passed in between confrontations. If a short time period in between warnings could preclude a charge of persistent disorderly conduct, the result would be absurd. Defendants who repeatedly disturb the peace would go unpunished if the officer chose not to arrest the suspect after the first warning. Moreover, if we were to permit a defendant to benefit from a charitable officer's departure, it would serve to discredit any warning given by an officer.
In the present case, the investigating officer was called to the scene three times. According to testimony from his neighbors, Barnes conduct was ongoing, starting from him pulling into the driveway and ending with his arrest. Although Barnes denies being warned about his conduct, there is credible evidence that Barnes had been warned repeatedly by Weekley. Barnes' situation is further distinquishable from Patrone in that he conceded to the disorderly nature of his conduct.
Considering the evidence in a light most favorable to the prosecution, Barnes' conviction is supported by sufficient evidence. Barnes' first assignment of error is meritless.
For his second assignment of error, Barnes asserts:
 "The Trial Court Erred In Finding Defendant Guilty Of Persistent Disorderly Conduct Against the Manifest Weight of the Evidence."
The issue we must resolve is whether Barnes' conviction of "persistent" disorderly conduct was against the manifest weight of the evidence. We previously held in State v. Kerry (July 20, 2001) Belmont App. No. 00 BA 20, unreported:
 "The standard of review where a trial court's decision is challenged as being against the manifest weight of the evidence is set forth in State v. Thompkins
(1997), 78 Ohio St.3d 380. An appellate court in essence sits as a `thirteenth juror' and determines whether, considering all the evidence admitted at trial, the state has met its burden of persuasion and the conclusion reached by the trier of fact is supported by the "* * * inclination of the greater amount of credible evidence * * *". Thompkins, supra
at p. 387. A judgment of the trial court will be reversed as against the manifest weight of the evidence only where it appears the trier of fact clearly lost its way, in order to correct a `manifest miscarriage of justice'. Thompkins, Id. Because reversals based upon the manifest weight are for exceptional circumstances, as the Supreme Court noted in Thompkins, Section 3(B)(3), Article IV of the Ohio Constitution mandates the unanimous concurrence of all three judges on the reviewing panel." Id. at 2.
Thus, Barnes will prevail upon appeal if this panel unanimously concludes the trial court, as the trier of fact, clearly lost its way and the finding that Barnes persisted in disorderly conduct is not supported by the greater amount of credible evidence.
Barnes cites State of Ohio v. Meyer (1988), 61 Ohio App.3d 673 to support his argument the verdict was against the manifest weight of the evidence. In Meyer, the court found that even if it is assumed that a defendant recklessly caused harm to another by creating a physically offensive condition, a conviction for disorderly conduct cannot be obtained in the absence of showing that the defendant's conduct served no lawful or reasonable purpose.
The defendant in Meyer had been arrested for protesting in front of an abortion clinic. Beside him at the protest, mounted on wheels, was an elaborately crafted display, some eight feet in height, consisting of a mannequin (representing one of the clinic's doctors) hanging from a wooden gallows, with its hands, seemingly stained with blood, bound behind its back. The court found that under those circumstances, Meyer's use of the display was a form of symbolic expression. Id. at 676. In the present case, Barnes claims that he had a lawful and reasonable purpose for blowing his horn, namely, he was only trying to assist a person who was seriously injured and bleeding.
This argument fails in two respects. First, Barnes testified the only reason he returned home for his wallet before "rushing" Cumberlidge to the hospital was because he planned on getting something to eat or drink while at the hospital. Moreover, he admitted he could have gone inside the house to retrieve his wallet instead of blowing his horn in the driveway. Secondly, the yelling, cursing, and pounding on windows as described by several witnesses at trial occurred after Barnes returned from the hospital. This is not protected speech, which was at issue inMeyer.
Barnes next argues there are credibility problems with the state's witnesses. Specifically, as he and his wife were in the process of a divorce, he claims his wife would benefit from his incarceration in her efforts to regain custody of their children. Barnes further asserts his wife's testimony changed from the time of the actual incident. Similarly, Barnes suggests there are credibility problems with Rhonda and Virginia as Virginia's boyfriend allegedly assaulted Barnes on the night in question.
However, Barnes makes the statement in his brief that he "should nothave been found guilty of persistent disorderly conduct but only of aminor misdemeanor of disorderly conduct." (Emphasis added.) His only possible challenge to the conviction would be in regard to the warnings he received from Weekley. This makes his assertion of credibility problems with respect to his wife, Rhonda, and Virginia irrelevant. The only pertinent decision faced by the trial court with respect to credibility was whether to accept the testimony of Weekley or the testimony of Barnes as being truthful.
The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212. A judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent credible evidence which goes to all the essential elements of the case. Cohen v. Lamko (1984), 10 Ohio St.3d 167, 462 N.E.2d 407. Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight of the evidence. State v.Nicely (1988), 39 Ohio St.3d 147, 529 N.E.2d 1236.
It was not an abuse of discretion by the trial court to find that Barnes' testimony lacked credibility and was unreliable, and instead give greater weight to the officer's testimony regarding the warnings he gave Barnes. At trial, there was testimony from several witnesses that Weekley had returned to the scene numerous times in response to complaints. It is not unreasonable to believe that an officer gave at least one warning on one of these numerous occasions. Reviewing the record and weighing the evidence and all reasonable inferences, we find no basis to conclude the trial court clearly lost its way. As Barnes' conviction was not against the manifest weight of the evidence, his second assignment of error is meritless.
For the preceding reasons, the judgment of the trial court is affirmed.
Vukovich, P.J., and Waite, J., concurs.