BAE, Individually and as Admr. of the Estate of Bae, Deceased, et al., Appellants,

v.

**DRAGOO AND ASSOCIATES, INC. et al., Appellees.**

[Cite as *Bae v. Dragoo & Assoc., Inc.*, 156 Ohio App.3d 103, 2004-Ohio-544.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 03AP–254.

Decided Feb. 3, 2004.

104

Ronald R. Gilbert; Shuler, Plank & Brahm and Michael F. Ryan, for appellants.

Caborn & Butauski Co., L.P.A., and Joseph A. Butauski, for appellees.

---

WATSON, Judge.

{¶ 1} This is an appeal from the judgment of the Franklin County Court of Common Pleas granting summary judgment to defendants Dragoo and Associates, Inc., and Stratford Chase Townhouses[1] ("Dragoo"). For the following reasons, we affirm.

{¶ 2} This case arises from the death of Nina L. Bae ("decedent"), who was six years old at the time she drowned in Dragoo's pool on August 12, 1999. A woman initially named as a defendant in this case, Yeong Mee Lee, was the adult responsible for supervising decedent and her own two daughters on the day in question. Ms. Lee and her two daughters were residents of Stratford Chase. Decedent was Ms. Lee's guest and accompanied them with the permission of decedent's parents.[2] Decedent and Ms. Lee's two daughters were playing in the shallow end of the pool. At some point, decedent had been under water for an extended period of time and was in distress. Ms. Lee, not being a swimmer herself, eventually noticed decedent's distress and enlisted the help of two older girls who were present.

{¶ 3} On August 8, 2001, plaintiffs Bruce Bae, individually, and as the administrator of the estate of decedent, and Jennifer Bae commenced this wrongful death action against Dragoo and Ms. Lee. Ms. Lee was voluntarily dismissed. Appellants alleged that decedent was an invited guest at the pool and that Dragoo, among other things, was negligent in supervision, negligently maintained a nuisance, and/or negligently allowed a hazard and nuisance to exist, failed to post adequate warnings, and failed to follow necessary safety regulations for swimming pools. Dragoo filed a motion for summary judgment, and appellants filed a cross-motion for partial summary judgment on a claim for spoliation of evidence. The trial court granted Dragoo's motion for summary judgment and found plaintiffs' cross-motion moot.

{¶ 4} The trial court found that decedent was a guest of a resident of the apartment complex and was a business invitee. Therefore, Dragoo owed the decedent a duty of ordinary care to see that the premises were reasonably safe.

---

1. Stratford Chase is the name of the apartment complex. Dragoo and Associates, Inc. manages the subject property.

2. Ms. Lee testified in her deposition that she did not know how to swim.

The court also stated that a swimming pool is an open and obvious danger appreciated by both minors and adults. The court looked to the Ohio Administrative Code for guidelines and requirements for public swimming pools. The court found that Dragoo complied with these requirements. Although plaintiffs presented an expert witness who testified as to several ways to make the pool safer, there was no statute or case law that would impose those heightened requirements on Dragoo. Therefore, the court granted summary judgment in favor of Dragoo. Plaintiffs (hereinafter "appellants") filed the instant appeal.

{¶ 5} Appellants assert the following assignments of error:

"I. Did the lower court err in applying an inappropriate and inaccurate standard of care to the decedent minor, Nina Bae, since Nina Bae, on the date of the accident, was under the age of [seven]?

"II. Did the lower court error [sic] in granting summary judgment when there were material and substantial questions of fact?

"III. Did the lower court error [sic] in determining that [appellants'] motion for spoliation of evidence was 'moot' when said motion should have been granted?

"IV. Were [appellants] reversibly prejudiced by [Dragoo's] 'destruction' of material evidence when [Dragoo] were [sic] on notice that said evidence was not to be destroyed as early as November 1999, three months after the date of the accident?"

{¶ 6} Appellate review of summary judgment motions is de novo. *Helton v. Scioto Cty. Bd. of Commrs.* (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App.3d 100, 103, 701 N.E.2d 383. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates the following: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343. In the summary judgment context, a "material" fact is one that might affect the outcome of the suit under the applicable substantive law. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123. When determining what is a "genuine issue," the court decides whether the evidence presents a sufficient disagreement between the parties' positions. Id.

{¶ 7} Further, when a motion for summary judgment has been supported by proper evidence, the nonmoving party may not rest on the mere allegations of the pleadings but must set forth specific facts, by affidavit or otherwise, demonstrat-

ing that there is a genuine triable issue. *Jackson v. Alert Fire & Safety Equip., Inc.* (1991), 58 Ohio St.3d 48, 52, 567 N.E.2d 1027. If the nonmoving party does not demonstrate a genuine triable issue, summary judgment shall be entered against that party. Civ.R. 56(E).

{¶ 8} In their first assignment of error, appellants argue that the trial court applied an incorrect standard by failing to consider Ohio Jury Instruction 245.03. That instruction states that a child under the age of seven is unable to exercise ordinary care and cannot contribute to any negligence. Appellants argue that because a jury cannot consider the negligence of a child under seven, nor can the trial court in determining summary judgment. Dragoo argues that appellants did not raise this issue in the lower court and it is therefore waived. However, as stated above, our review of summary judgment is de novo. Implicit in that review is whether the trial court applied the correct legal standard.

{¶ 9} It is fundamental that in order to establish a cause of action for negligence, the plaintiff(s) must show (1) the existence of a duty; (2) a breach of that duty; and (3) injury proximately resulting therefrom. *Armstrong v. Best Buy Co., Inc.,* 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, at ¶ 8.

{¶ 10} In Ohio, the status of the person who enters upon another's land determines the scope of the legal duty the landowner owes to the entrant. *Gladon v. Greater Cleveland Regional Transit Auth.* (1996), 75 Ohio St.3d 312, 315, 662 N.E.2d 287. An invitee is one who enters the premises of another by express or implied invitation for some purpose that is beneficial to the owner. Id. If the entrant is an invitee, the landowner must exercise ordinary care for the invitee's safety and protection. Id. at 317, 662 N.E.2d 287. However, a landowner is not an insurer of an invitee's safety. *Paschal v. Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St.3d 203, 18 OBR 267, 480 N.E.2d 474. Further, there is no duty to protect an invitee from known dangers, meaning dangers that are so obvious and apparent that the invitee may reasonably be expected to discover them and protect herself against them. Id. at 203–204, 18 OBR 267, 480 N.E.2d 474. A licensee is one who goes upon the land of another by permission or acquiescence of the landowner for the licensee's own pleasure or convenience. *Wanko v. Downie Productions, Inc.* (Aug. 24, 2000), Franklin App. No. 99AP–1047, 2000 WL 1199235. A trespasser is one who, without express or implied permission or acquiescence, enters private property purely for his or her own purposes and convenience. Id. If the status of the entrant is one of licensee or trespasser, then the landowner's duty is only to refrain from willful and wanton conduct unless it is a child trespasser. *Gladon,* supra, 75 Ohio St.3d at 317, 662 N.E.2d 287.

{¶ 11} The law regarding a child's status and particularly whether swimming pools present a danger to children was recently addressed in *Bennett v. Stanley* (2001), 92 Ohio St.3d 35, 748 N.E.2d 41. The court faced the issue of whether

child trespassers should become another class of users entitled to a different standard of care than that of ordinary trespassers. Id. at 39, 748 N.E.2d 41. The court stated:

"This court has consistently held that children have a special status in tort law and that duties of care owed to children are different from duties owed to adults:

" '[T]he amount of care required to discharge a duty owed to a child of tender years is necessarily greater than that required to discharge a duty owed to an adult under the same circumstances. This is the approach long followed by this court and we see no reason to abandon it. "Children of tender years, and youthful persons generally, are entitled to a degree of care proportioned to their inability to foresee and avoid the perils that they may encounter. * * *" ' " Id., quoting Di Gildo v. Caponi (1969), 18 Ohio St.2d 125, 127, 47 O.O.2d 282, 247 N.E.2d 732.

{¶ 12} The court then adopted the Restatement's position regarding child trespassers and the attractive-nuisance doctrine. Bennett, supra, 92 Ohio St.3d at 40–43, 748 N.E.2d 41; Restatement of the Law 2d, Torts (1965), Section 339. That doctrine states that a possessor of land is subject to liability for physical harm to a child trespasser caused by an artificial condition if (1) the place where the condition exists is one which the possessor knows is frequented by children; (2) the condition involves an unreasonable risk of death or serious harm to the children and the possessor knows or has reason to know of such risk; (3) the children, because of their youth, do not realize the risk involved; (4) the possessor can maintain the condition and eliminate danger with little burden as compared with the risk involved; and (5) the possessor fails to exercise reasonable care to eliminate the danger or otherwise protect the children. Bennett, 92 Ohio St.3d at 40, 748 N.E.2d 41.

{¶ 13} Therefore, the attractive-nuisance doctrine requires a possessor to exercise ordinary or reasonable care to children who trespass upon the premises when there is an unreasonable risk of death or serious harm. The court stated, "Even when a landowner is found to have an attractive nuisance on his or her land, the landowner is left merely with the burden of acting with ordinary care. A landowner does not automatically become liable for any injury a child trespasser may suffer on that land." Bennett, 92 Ohio St.3d at 42, 748 N.E.2d 41. Moreover, the landowner's duty " 'does not extend to those conditions the existence of which is obvious even to children and the risk of which should be fully realized by them.' " (Emphasis added.) Id. at 42–43, 748 N.E.2d 41, quoting Restatement of the Law 2d, Torts (1965), Section 339, Comment i.

{¶ 14} It has also been noted in Ohio that swimming pools present an open-and-obvious danger even to minors. Mullens v. Binsky (1998), 130 Ohio App.3d

64, 719 N.E.2d 599. Yet a child under seven years of age is incapable of contributory negligence. *Williams v. Putnam Transfer & Storage Co.* (Feb. 3, 1994), Cuyahoga App. No. 64659, 1994 WL 30425, citing *Holbrock v. Hamilton Distributing, Inc.* (1967), 11 Ohio St.2d 185, 40 O.O.2d 168, 228 N.E.2d 628; *Benning v. Schlemmer* (1937), 57 Ohio App. 457, 461, 11 O.O. 196, 14 N.E.2d 941 (contributory negligence need not be submitted to jury since a child of tender years lawfully upon a public highway could not be found guilty of contributory negligence). Here, appellants argue that the trial court improperly considered decedent's contributory negligence. Appellants misinterpret the concept of contributory negligence and open-and-obvious dangers. The court found that the pool was an open-and-obvious danger of which even a child of tender years should have been aware. The open-and-obvious doctrine is related to a landowner's *duty*, while contributory negligence relates to the issue of proximate cause. *Armstrong*, supra, 99 Ohio St.3d at 82, 788 N.E.2d 1088. If a danger is open and obvious, the landowner owes *no* duty to individuals lawfully on the premises. Id. Here, the trial court did not consider contributory negligence on the part of decedent.

{¶ 15} We decline to determine whether a swimming pool is an open-and-obvious danger to a child under seven years of age. For purposes of this opinion only, we will assume that a duty of ordinary care was owed to decedent as an invitee.[3] However, for the reasons set forth below, we find that Dragoo satisfied its duty of ordinary care under the facts of this case. Accordingly, appellants' first assignment of error is overruled.

{¶ 16} In the second assignment of error, appellants argue that the trial court erred in granting summary judgment, as there were genuine issues of material fact as to whether Dragoo was negligent. As stated above, in order to establish a cause of action for negligence, the plaintiff(s) must show (1) the existence of a duty; (2) a breach of that duty; and (3) injury proximately resulting therefrom. Id., 99 Ohio St.3d at 81, 788 N.E.2d 1088. We have assumed for purposes of this opinion that Dragoo owed decedent a duty of ordinary care to keep the pool premises reasonably safe. The next issue is whether Dragoo breached that duty.

{¶ 17} Appellants maintain that there are a number of genuine issues of material fact as to Dragoo's breach of its duty, precluding an award of summary

---

**3.** We note that the attractive-nuisance doctrine technically does not apply, because decedent was not a child trespasser. However, it could be argued that decedent was a licensee, since there was arguably no benefit to Dragoo by her use of the pool. If the Ohio Supreme Court applied the attractive nuisance doctrine to child trespassers, it is likely the same would apply to child licensees. Although we do not decide that particular issue, the standard would still be that of ordinary care.

judgment. For example, appellants maintain that (1) the drowning could have been prevented if the pool had a trained and certified lifeguard on duty; (2) the size of the pool was intentionally chosen to avoid having lifeguards, even though the cost of having lifeguards is less than the cost of human life; (3) the drowning could have been prevented by using underwater surveillance; (4) there was no emergency plan in place to deal with a drowning; (5) the employees had no training or certification with water rescue, CPR, or first aid; (6) accurate daily records of the pool maintenance were not kept; (7) inspections and audits would have identified deficiencies in the management and operation of the pool; (8) adults cannot provide adequate supervision; and (9) there was no emergency telephone located on the pool deck. Appellants' expert, Alison Osinski, testified as to these matters.

{¶ 18} Regulations relating to public swimming pools are set forth in Ohio Adm.Code 3701–31–04 et seq. Specifically, the health and safety requirements for public pools are set forth in Ohio Adm.Code 3701–31–05. Lifeguard requirements are established by the size of the pool. If a pool is under 2,000 square feet, a lifeguard is required *only* if there are 50 or more people *inside the pool.* Ohio Adm.Code 3701–31–05(B). For pools without a lifeguard, the licensee must provide a personal flotation device, such as a ring buoy or other throwing device. Ohio Adm.Code 3701–31–05(F). The licensee must provide first aid equipment, including a first aid kit, in an accessible location. Ohio Adm.Code 3701–31–05(G). The licensee must have at least one back or spine board, and if the pool is required to have a lifeguard, the board must be equipped with straps and head immobilizers. Ohio Adm.Code 3701–31–05(H). A telephone must be available within 500 feet of the public pool with a list of emergency numbers, and the licensee must ensure that the telephone is available during the times the pool is open for use. Ohio Adm.Code 3701–31–05(I). Finally, chemicals must be stored in clearly labeled containers and stored in a way to prevent a hazard. Ohio Adm.Code 3701–31–05(J).[4]

{¶ 19} Here, Ms. Lee accompanied the children to the pool and knew that no lifeguard was present. She testified that on the day of the accident, and other times when she had used the pool, the water was clear and she could see the children swimming at the bottom. Ms. Lee testified that when she and the children arrived, there was no one else present. Two other girls eventually came to the pool during decedent's stay. Ms. Lee testified that there was a fence around the perimeter of the pool, there was a pay phone and an office phone nearby, and there was a "floating tube" in the perimeter. Ms. Lee also testified

4. There are also regulations regarding the quality of water and the operation of the pool specified in Ohio Adm.Code 3701–31–06 and 3701–31–07.

that a "tall black guy," whom she did not know but apparently was an employee, attempted to give decedent some type of "resuscitation or CPR."

{¶ 20} One of the licensed pool inspectors, Ayotunde Oyelakin, also testified about the Stratford pool. Oyelakin testified that when a pool is inspected, the inspector is looking for *any* violations of the applicable code provisions. These inspections are surprise inspections, meaning that the licensee is not aware that anyone from the health department is coming at a particular time. During the summer of 1999, Oyelakin inspected the pool twice prior to the accident, once on May 13, 1999, and again on May 24, 1999. On both occasions, Oyelakin found zero code violations. Oyelakin testified that no lifeguard was required, based on the size of the pool (which Oyelakin measured himself) and the number of bathers. Appropriate signs were present,[5] appropriate safety equipment was present, e.g., a spine board, ring buoy, and first aid kit, and a telephone was located within 500 feet of the pool. On both occasions, he noted the pool as a "good pool." Oyelakin also testified that Dragoo kept appropriate records.

{¶ 21} Oyelakin also inspected the pool on August 20, 1999, approximately one week after the drowning occurred. Again, he reported no code violations.[6] Further, although appellants' counsel tried very hard during both Oyelakin's and Malmevik's depositions to get either of them to admit that a spine board without straps and/or a head immobilizer is inadequate for safety reasons, both testified that under the code provision, if no lifeguard is required, then the spine board is *not* required to have straps or head immobilizers. Ohio Adm.Code 3701–31–05(H).[7]

{¶ 22} John Dragoo also testified as a representative of Dragoo and Stratford Chase. Mr. Dragoo testified that apartment pools in the Columbus area do not have lifeguards. He also testified that Stratford Chase had appropriate safety equipment and that he and his employees pay attention to pool chemistry,

---

5. If no lifeguard is required due to the size of the pool and/or number of bathers in the pool, then the facility must have "no lifeguard" signs to alert users.

6. Another inspector, Deborah Malmevik, also inspected the Stratford pool on July 7, 1999, and found no code violations, except that the gate to the pool was not "self closing." However, the gate was repaired by the time of her next visit, which was one day after the accident on August 13, 1999. There were no other problems on July 7, 1999. With respect to the August 13 inspection, Malmevik found no problems with water clarity, the appropriate "no lifeguard" and telephone signs were present, a spine board was present, an emergency phone with necessary emergency numbers was located within 500 feet of the pool, there were no sanitation problems, and there were no other applicable code violations. Malmevik also testified that if daily records were not kept, she would have indicated this problem in her report but that she did not so indicate.

7. Ohio Adm.Code 3701–31–05(H) states, "All public swimming pools or special use pools shall have at least one back or spine board. At public swimming pools and special use pools where lifeguards are on duty, these boards shall be equipped with straps and head immobilizers."

filtration, and security concerns. Mr. Dragoo also testified that he stresses to adult residents the fact that they are responsible for the supervision of their children, under 12 years old, while using the pool. Residents were warned that no lifeguard was on duty by a specific provision in the lease as well as information contained in packets they received when they moved into the complex.

{¶ 23} Despite this testimony, appellants claim that the pool at issue was not safe. Appellants continually argue that Dragoo complied with only the *minimum* requirements under Ohio law and that Dragoo should have exceeded the minimum. Appellants' expert, Osinski, goes to great lengths in her deposition to describe how Dragoo could have and should have provided the safest swimming-pool environment possible. For example, she opined that the pool should have had a lifeguard to prevent the drowning, that Dragoo should have had automated external defibrillators nearby, that Dragoo should have had an emergency phone tied directly to rescue services, that Dragoo should have had CPR and first-aid-trained employees, and that Dragoo should have had electronic or video surveillance systems installed in order to identify distressed swimmers.

{¶ 24} Contrary to Osinski's assertions, Dragoo is simply not required to maintain a perfectly safe pool. Unfortunately, there is no such thing. Rather, Dragoo's duty is to keep the premises in a *reasonably* safe condition. Here, Dragoo complied with all applicable regulations. Osinski even testified that this pool could be used safely as it was constructed and operated in 1999. She also testified that the only way to eliminate all the hazards associated with a swimming pool is to eliminate the pool itself.

{¶ 25} Based on the foregoing evidence, we find that Dragoo did not breach its duty to decedent. Although Osinski testified to numerous ways to make the pool safer than what is required under Ohio law, her testimony does not raise any "genuine" issues of material fact in this case. Both random inspectors testified that this particular pool was a good pool and that there were no violations of the applicable code during any inspection.[8] Accordingly, appellants' second assignment of error is overruled.

■ {¶ 26} In the third assignment of error, appellants claim that the trial court erred in finding their motion for partial summary judgment on the spoliation of evidence moot. We disagree. In order to establish a claim for spoliation of evidence, appellants must establish (1) pending or probable litigation involving the plaintiff; (2) knowledge on the part of defendant that litigation exists or is probable; (3) *willful* destruction of evidence by defendant designed to disrupt the plaintiff's case; (4) disruption of the plaintiff's case; and (5) damages

---

8. The only issue was the gate that was not self-closing, which is not a material fact in this case.

proximately caused by the defendant's acts. *White v. Ford Motor Co.* (2001), 142 Ohio App.3d 384, 386, 755 N.E.2d 954.

{¶ 27} Here, because we find that Dragoo satisfied its duty of care owed to decedent, appellants cannot establish any damages resulting from any *alleged willful* destruction of records. Appellants implicitly suggest that these records would show that there are sometimes more than 50 bathers or would otherwise show the pool is unsafe. However, at no time during an inspection were there 50 bathers, and Ms. Lee testified that no more than six persons were present at the pool on the day in question. Accordingly, a lifeguard was not required. Notwithstanding decedent's tender years, under the facts of this case, there is no legal basis upon which to hold Dragoo liable.

{¶ 28} Further, appellants did not properly set forth a claim for spoliation of evidence in the complaint. Nowhere in the complaint is there an actual count for spoliation of evidence, and there is no indication in the facts set forth that such a claim might be raised. Appellants merely stated that Dragoo did not keep proper records. The complaint was never amended to include this claim after appellants' counsel was apparently dissatisfied with Dragoo's discovery responses. Therefore, appellants' motion was properly overruled as moot. Accordingly, appellants' third assignment of error is overruled.

{¶ 29} In the fourth assignment of error, appellants assert that they were reversibly prejudiced by Dragoo's alleged destruction of certain documents after being told not to do so. Based on the above, the fourth assignment of error is rendered moot.

{¶ 30} In conclusion, appellants cannot establish negligence on the part of Dragoo. First, Dragoo was required to exercise ordinary care to keep the pool premises reasonably safe for decedent. Although the trial court found the swimming pool to be open and obvious to decedent, it did not find contributory negligence on the part of decedent. Second, Dragoo did not breach its duty. Dragoo met the requirements of Ohio law related to public swimming pools. The fact that Dragoo did not go above and beyond what is required does not establish a breach of its duty. Third, appellants' motion for partial summary judgment on the spoliation-of-evidence claim was properly overruled as moot. Therefore, appellants were not reversibly prejudiced by the alleged destruction of pool records.

{¶ 31} Based on the foregoing, appellants' first, second, and third assignments of error are overruled, the fourth assignment of error is rendered moot, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

BOWMAN and BROWN, JJ., concur.