UDDIN, ADMR., APPELLEE, *v.* EMBASSY SUITES HOTEL ET AL., APPELLANTS.

[Cite as *Uddin v. Embassy Suites Hotel,* 113
Ohio St.3d 1249, 2007-Ohio-1791.]

(No. 2006–0189—Submitted February 13, 2007—Decided May 2, 2007.)

{¶ 1} The cause is dismissed, sua sponte, as having been improvidently accepted.

LUNDBERG STRATTON, O'DONNELL, LANZINGER and CUPP, JJ., concur.

MOYER, C.J., PFEIFER and O'CONNOR, JJ., dissent.

---

**O'CONNOR, J., dissenting.**

{¶ 2} A ten-year-old girl, Shayla Uddin, drowned in an indoor pool at a hotel while under adult supervision and while other children played around her. Independent witnesses, including homicide detectives responding to the scene within two hours after Shayla's body was discovered, described the water in the pool at the time of the girl's death as "cloudy and murky," "real creamy," and "almost milky." A witness stated that it was not possible to see the bottom of the pool, even though it was no more than five feet deep at its greatest depth. According to that witness, "when a child went underwater * * * you lost sight of them because the water was so murky and creamy." Indeed, Shayla was located not by visual inspection of the pool from its surface, but by someone feeling along the bottom of the pool for her body.

{¶ 3} Because I believe that this court should answer two important legal questions that arise from the circumstances of her death, and because I believe that the judgment of the court of appeals should be affirmed, I dissent from the majority's decision to dismiss this appeal as having been improvidently accepted.

## I. The Open–and–Obvious–Danger Doctrine

{¶ 4} Shayla and her family were invitees of the hotel, see, generally, *Gladon v. Greater Cleveland Regional Transit Auth.* (1996), 75 Ohio St.3d 312, 315, 662 N.E.2d 287, and accordingly the hotel was required to exercise reasonable care for their safety and protection, id. at 317, 662 N.E.2d 287, and to advise them of

latent dangers on the premises, *Jackson v. Kings Island* (1979), 58 Ohio St.2d 357, 12 O.O.3d 321, 390 N.E.2d 810.

{¶ 5} The hotel, however, owed no duty to Shayla and her family regarding dangers on the premises that were open and obvious. *Armstrong v. Best Buy Co., Inc.,* 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 5, citing *Sidle v. Humphrey* (1968), 13 Ohio St.2d 45, 42 O.O.2d 96, 233 N.E.2d 589. As we explained in *Armstrong,* the rationale for the open-and-obvious doctrine is that " 'the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves.' " Id., quoting *Simmers v. Bentley Constr. Co.* (1992), 64 Ohio St.3d 642, 644, 597 N.E.2d 504.

{¶ 6} Ohio's appellate courts generally have held that a swimming pool constitutes an open and obvious danger. *Estate of Valesquez v. Cunningham* (2000), 137 Ohio App.3d 413, 420, 738 N.E.2d 876, and cases cited therein. Our courts also have suggested generally, based on law from other jurisdictions, that the doctrine applies to both adults and minors. *Mullens v. Binsky* (1998), 130 Ohio App.3d 64, 71, 719 N.E.2d 599, quoting *Torf v. Commonwealth Edison* (1994), 268 Ill.App.3d 87, 89, 205 Ill.Dec. 911, 644 N.E.2d 467 (a case involving an 18–year–old who was drowned in a swimming pool at a graduation party, noting that " 'generally the danger of drowning in a body of water is considered an open and obvious risk which both minors and adults should be expected to be able to appreciate and avoid' ").

{¶ 7} Ohio's appellate courts have been reluctant to apply the open-and-obvious doctrine to children of tender years. See, e.g., *Bae v. Dragoo & Assoc., Inc.,* 156 Ohio App.3d 103, 2004-Ohio-544, 804 N.E.2d 1007, ¶ 15 ("We decline to determine whether a swimming pool is an open-and-obvious danger to a child under seven years of age"). This case is not squarely within the scope of either *Mullens* or *Bae.* Nevertheless, the trial court here held, without citation of authority, that the hotel's "indoor swimming pool was an open and obvious danger of which even a child of ten years old * * * should have been aware." It thus granted the hotel's motion for summary judgment in the wrongful-death and negligence action that followed Shayla's drowning.

{¶ 8} Given the importance of the issue presented here and the unique issues presented by children in Ohio tort law, see *Bennett v. Stanley* (2001), 92 Ohio St.3d 35, 39, 748 N.E.2d 41 ("This court has consistently held that children have a special status in tort law and that duties of care owed to children are different from duties owed to adults"); *Di Gildo v. Caponi* (1969), 18 Ohio St.2d 125, 127, 47 O.O.2d 282, 247 N.E.2d 732 ("the amount of care required to discharge a duty owed to a child of tender years is necessarily greater than that required to

discharge a duty owed to an adult under the same circumstances"), I believe that this court should answer the question of whether the hotel owed a duty to Shayla, or whether no duty existed because the open-and-obvious doctrine applied to young children like her.

{¶ 9} In so doing, this court should also address whether the increased peril of drowning associated with opaque or murky water in a swimming pool, i.e., that a swimmer who is in distress cannot be seen in murky water once she has sunk beneath its surface, is sufficiently apparent to a child of tender years to warrant the application of the open-and-obvious-danger doctrine to her. Compare *Kerns v. G.A.C., Inc.* (1994), 255 Kan. 264, 281, 875 P.2d 949 ("there is a question of * * * whether the accumulation of murky water contributed to the injury because rescuers were unable to see [the child], who was underneath the water"), with *Alabama Farm Bur. Mut. Cas. Ins. Co. v. Hixon* (Ala.1988), 533 So.2d 518, 520 ("Assuming that the water was cloudy, and that people in the pool area could not see [the child decedent] on the bottom of the pool because of the cloudy condition, this fact alone does not establish that the condition presented an unreasonable risk. * * * Also, if the jury considered the condition of the pool water to present an unreasonable risk, then the defendant, as a matter of law, is not liable for the injury, because the injury resulted from a condition that was obvious and should have been observed in the exercise of reasonable care"). On the facts presented by this case, I would hold that the open-and-obvious doctrine is not applicable to children of tender years.

{¶ 10} As the concurring opinion in the court of appeals stated, "even if a swimming pool may not generally present a hidden danger involving an unreasonably dangerous condition, a minor may not be able to foresee or appreciate the dangers posed by failure to comply with pertinent administrative regulations. An adult may instantly recognize that cloudy water increases his or her risk of drowning because the diminished clarity impairs the vision of those supervising, thereby hindering potential rescue efforts. To a ten-year-old child, however, the danger may not be as readily apparent." 165 Ohio App.3d 699, 2005-Ohio-6613, 848 N.E.2d 519, ¶ 59. I agree with the court of appeals that the trial court erred by finding that the open-and-obvious doctrine applied to a ten-year-old child on the facts presented here, and in granting summary judgment in favor of the hotel. Accordingly, I would affirm.

## II. The Effect of a Violation of an Administrative Rule

{¶ 11} Based on the pool water's lack of clarity, Shayla's estate argued in opposition to the hotel's motion for summary judgment that the hotel was not in compliance with Ohio Adm.Code 3701-31-07. At the time of the events relevant here, that provision stated that the water must be sufficiently clear "that a black disc, six inches in diameter, is readily visible when placed on a light field at the

deepest point of the pool and is viewed from the pool side." Former Ohio Adm.Code 3701–31–07(C), 1998–1999 Ohio Monthly Record 313.[1]

{¶ 12} The hotel disputed the appellees' contention. It offered evidence that two days after Shayla's death, local public-health officials tested the water and found that although its chlorine level was unacceptably low, the water was "very clear." The inspector who performed that testing stated that "very clear" meant that the pool bottom was visible from any vantage point on the side of the pool. The hotel suggested that it was in compliance with former Ohio Adm.Code 3701–31–07(C), as well as all other administrative regulations for pool safety, including those requiring signage warning of the risks of swimming without a lifeguard present, Ohio Adm.Code 3701–31–04(K)(3), and those requiring that floatation devices and other safety equipment be located nearby, Ohio Adm.Code 3701–31–05(F), (G), and (H).

{¶ 13} The effect of the possible violation of the administrative rule governing the clarity of water in public pools is a critical issue in this case. We have held that the determination of Ohio's public policy remains the province of the General Assembly, *State ex rel. Bryant v. Akron Metro. Park Dist. for Summit Cty.* (1929), 120 Ohio St. 464, 479, 166 N.E. 407, affirmed (1930), 281 U.S. 74, 50 S.Ct. 228, 74 L.Ed. 710, and that administrative rules are to reflect the public policy established by the General Assembly in the Revised Code, *Doyle v. Ohio Bur. of Motor Vehicles* (1990), 51 Ohio St.3d 46, 47, 554 N.E.2d 97, as well as the technical expertise of the administrative agencies that draft administrative rules. We have also held that although a violation of an administrative rule does not constitute negligence per se, such a violation may be admissible as evidence of negligence. *Chambers v. St. Mary's School* (1998), 82 Ohio St.3d 563, 568, 697 N.E.2d 198. In cases in which reasonable minds could differ as to whether the act or omission that gives rise to the violation of the rule constitutes the proximate cause of the accident, the determination should be left to the jury. *Merchants Mut. Ins. Co. v. Baker* (1984), 15 Ohio St.3d 316, 318, 15 OBR 444, 473 N.E.2d 827. See, also, *Kerns*, 255 Kan. at 282, 875 P.2d 949.

{¶ 14} We have not reached the question of what effect, if any, a violation of an administrative rule has on the open-and-obvious doctrine. The trial court concluded that the possible violation of an administrative rule was irrelevant because the open-and-obvious doctrine applied and the hotel therefore owed no duty. The thoughtful but splintered decision of the court of appeals, which rejected that conclusion, illustrates some confusion as to how to address such issues. Other appellate courts have considered the question as well, with differing results.

---

1. The provision currently requires the licensee of the pool to "ensure that the water in any public swimming pool * * * has sufficient clarity when in use that the pool bottom at the deepest point of the pool is readily visible when viewed from the pool side." Ohio Adm.Code 3701–31–07(D).

Compare *Francis v. Showcase Cinema Eastgate*, 155 Ohio App.3d 412, 2003-Ohio-6507, 801 N.E.2d 535, ¶ 10, with *Olivier v. Leaf & Vine*, 2d Dist. No. 2004 CA 35, 2005-Ohio-1910, 2005 WL 937928, ¶ 28.

{¶ 15} Given the apparent uncertainty in courts, and the important public-policy issues that underlie both the open-and-obvious doctrine and the promulgation of public-health administrative rules, I believe we should address how a possible violation of the Ohio Administrative Code affects the analysis governing the open-and-obvious doctrine. Like the court of appeals, I would hold that if there is evidence that could support a finding that a defendant violated an administrative rule, and if that violation raises a genuine issue of material fact as to whether there was a duty, a breach, and proximate cause, summary judgment is inappropriate. That conclusion is based not only on the law of summary judgment, but also important public policies.

{¶ 16} As the lead opinion of the court of appeals recognized, "[w]hen we are considering a motion for summary judgment, to ignore a party's purported violation of an administrative rule that is supported by some evidence would vitiate the legal significance of an administrative rule. For instance, in a case wherein summary judgment is sought and application of the open-and-obvious rule is disputed, if a defendant's purported violation of the administrative code that was supported by some evidence were ignored, a party could violate an administrative rule, thereby possibly endangering public safety, yet be insulated from liability because such a violation constituted an open-and-obvious condition." 165 Ohio App.3d 699, 2005-Ohio-6613, 848 N.E.2d 519, ¶ 37. To hold otherwise, we would have to defy the legal significance of administrative rules and suspend common sense. The court of appeals properly recognized these inherent failings in the appellants' argument to the contrary, and its opinion should be affirmed.

{¶ 17} Accordingly, I dissent.

MOYER, C.J., and PFEIFER, J., concur in the foregoing opinion.

———————

W. Joseph Edwards; and Twyford & Donahey, P.L.L., and Mark Defossez, for appellee.

Mansour, Gavin, Gerlack & Manos Co., L.P.A., Dale Markworth, and Amy L. Phillips, for appellants.