DECISION DENYING PETITIONER'S MOTION FOR A WRIT OF PROHIBITION, DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT, DENYING RESPONDENTS' MOTION FOR SUMMARY JUDGMENT AND JUDGMENT ON THE PLEADINGS, AND GRANTING RESPONDENTS' MOTION FOR AN ALTERNATIVE WRIT.
{¶ 1} Some cases appear headed for disaster right from the start. We are now forced to clean up just such a case — before even more damage is done. Considering that there is a reasonable probability that this case never should have proceeded in the first place, it has become a procedural nightmare.
 {¶ 2} The respondents, Judge Ronald A. Panioto and the Domestic Relations Division of the Hamilton County Court of Common Pleas (collectively, "the court"), have moved for an alternative writ. We grant the alternative writ and order the court not to proceed on any substantive motions until it and the parties have taken the necessary steps in accordance with our decision. We deny all other motions.
 I. A Guardian, a Ward, a Husband, and a Divorce {¶ 3} While we have initially been asked to review a divorce proceeding in the domestic relations court that began in 1998, our review must start even before that, with a probate court case that began in 1997. The record for that case is not before us on appeal, but we take judicial notice of its docket because it is capable of accurate and ready determination by resort to a source whose accuracy cannot reasonably be questioned.[1]
 {¶ 4} In November 1997, the probate court entered a judgment appointing Stephanie Downs as the emergency guardian of her mother, Linda Downs, until December 1997. (Because several of the parties are members of the same family, we refer to them by their first names.) In early January 1998, a magistrate found Linda to be incompetent because of a mental impairment. But Stephanie was not actually appointed Linda's permanent guardian until May 1998.
 {¶ 5} It was during the period between the probate court's finding Linda incompetent and Stephanie's appointment as her guardian that David Downs filed for divorce from Linda in March 1998. It appears that he only served the complaint on Linda, not on Stephanie. Linda, through her attorney and without Stephanie's involvement in the case, filed an answer and a counterclaim in April 1998.
 {¶ 6} By the fall of 2003, David tried to have the divorce action dismissed because of Linda's incompetency. Why neither party had bothered to bring this up during the preceding five years is anyone's guess. The domestic relations court denied David's motion to dismiss. David then withdrew his complaint and dismissed his action. Linda, still without Stephanie's involvement in the case, then amended her counterclaim to assert a claim for separation. While Stephanie's name does appear in the certified copy of the record that we have received as part of the court's motion for summary judgment, she was never made a party to the divorce proceedings.
 {¶ 7} David then petitioned our court for a writ of prohibition. He now asserts that the domestic relations court lacks jurisdiction over the proceedings, but is about to exercise judicial power by ruling on several of Linda's motions. David also asserts that he has no adequate remedy at law. We note parenthetically that David — the party who filed for divorce in the first place and invoked the jurisdiction of the domestic relations court — is now the party who asks that we declare that the court never had jurisdiction.
 {¶ 8} The domestic relations court has moved for judgment on the pleadings or for summary judgment, relying on the affidavit of Brian Johnson, a Deputy Clerk of Courts Supervisor in the domestic relations court, and it has also moved for an alternative writ. Attached to Johnson's affidavit were most of the pleadings in the underlying case. David has filed his own motion for summary judgment.
 {¶ 9} We deal first with David's requested writ of prohibition, then with the alternative writ. One could argue that we are actually granting a partial writ of prohibition or a contingent summary judgment or a would-be judgment on the pleadings. But it's the best we can do, considering the status of the case.
 II. Standard for a Writ of Prohibition {¶ 10} A writ of prohibition should be issued only in cases of extreme necessity, because of the absence or inadequacy of other remedies and only when the right is clear; and it should never be issued in a doubtful or borderline case.[2] This is a borderline case.
 {¶ 11} To obtain a writ of prohibition, David must establish (1) that Judge Panioto is about to exercise judicial or quasi-judicial power, (2) that the exercise of such power is unauthorized by law, and (3) that a denial of the writ will cause injury to David for which no other adequate remedy exists in the ordinary course of law.[3]
 {¶ 12} The Ohio Supreme Court has stated that if a trial court has general subject-matter jurisdiction over a cause of action, the court has the authority to determine its own jurisdiction, and a party challenging the court's jurisdiction has an adequate remedy at law by appeal.[4]
But where a court patently and unambiguously lacks jurisdiction over the cause, a writ of prohibition to prevent any future unauthorized exercise of jurisdiction is proper.[5] Thus, if the lower court's lack of jurisdiction is patent and unambiguous, the availability of an adequate remedy at law is immaterial.[6]
 {¶ 13} If an appeal is an adequate remedy of law, prohibition is not appropriate to correct errors made by the court. But the Ohio Supreme Court has recognized an exception to this rule:
 {¶ 14} "If an inferior court is without jurisdiction whatsoever to act, the availability or adequacy of the remedy of appeal to prevent the resulting injustice is immaterial to the exercise of supervisory jurisdiction by a superior court to prevent usurpation of jurisdiction by an inferior court."[7]
 {¶ 15} So if the domestic relations court did not have any jurisdiction in this case, we could rightfully grant David's writ. Whether the court had jurisdiction turns on questions of service and the rights of an incompetent person.
 III. Service on and Rights of an Incompetent Ward {¶ 16} A court does not acquire jurisdiction until there has been proper service of process.[8] Service of process may be obtained on an incompetent person not confined in an institution by serving the incompetent's guardian.[9] One of the main problems in this case is that we cannot say whether Stephanie was Linda's guardian in March 1998, because there was a four-month gap between the probate court's finding Linda incompetent and Stephanie's appointment as her guardian. If Stephanie was Linda's guardian when David initially filed for a divorce, David should have served the complaint on Stephanie. Even though Linda filed an answer, this could not have waived service because an incompetent person does not have the capacity to waive service.[10] And David had to have known (or at least should have known) that Linda was incompetent because he was her next of kin.
 {¶ 17} An incompetent person also does not have the authority to contract for an attorney in a civil case.[11] And if there was no contract, Linda would not be obligated to pay. So we are not certain how she obtained counsel who was willing to represent her in the divorce action, unless her counsel was not aware that she had been declared incompetent. But given the fact that the record says that her physical and mental incompetence is complete, we do not see how this would have been possible. Further, an incompetent ward may not bring a divorce action without a guardian's involvement in the case.[12]
 {¶ 18} So if Linda had been incompetent prior to David's filing the divorce action, and if the probate court had appointed Stephanie as Linda's guardian, David's service was inadequate and the court lacked jurisdiction. The entire divorce proceedings, from their inception, would therefore have been rendered void. This appears to be exactly what happened. The record that we have is not completely clear; otherwise we may well have granted David's motion for a writ of prohibition. But as we have already said, a writ of prohibition is not proper in a borderline case.[13]
 {¶ 19} Normally, the appointment of a guardian does not automatically interfere with the jurisdiction of a court in a pending divorce action.[14] But this case was not pending when Linda was declared incompetent. And there is yet another wrinkle to this case because Linda filed a counterclaim and an amended counterclaim against David. Even though the case was arguably properly before the domestic relations court (assuming service was proper, which it does not appear to have been) when David initially filed for divorce, once he withdrew his complaint in 2003, the only thing over which the court could have arguably had jurisdiction was Linda's amended counterclaim. But if Linda was not competent, then her attorney could not have been authorized to represent her in the divorce proceedings unless her attorney had been appointed by the probate court or by Stephanie. And Linda, as an incompetent ward, could not have filed for divorce herself.[15]
 IV. Resolution {¶ 20} This case is a procedural nightmare. It is not clear why Stephanie was not made a real party in interest or why she did not sue on behalf of Linda, as she was entitled to do.[16] Stephanie, as Linda's guardian, could have brought a divorce action as long as Linda's mental incapacity did not preclude her from testifying.[17] It is also not clear whether Linda had the authority to hire her divorce attorney, or whether that attorney had been appointed by the probate court. And we cannot understand how no one in the divorce case bothered to bring up Linda's incompetency for five years, during which time the domestic relations court ruled on numerous motions and exercised jurisdiction in any number of ways over a case that it may not have had jurisdiction over in the first place.
 {¶ 21} We hereby order the domestic relations court not to proceed on any substantive motions until it and the parties can straighten out the record in both the domestic-relations and the probate cases. This delay would also allow the domestic relations court and the parties to determine the following:
 {¶ 22} (1) Whether Linda had been appointed a guardian at the time of David's filing for divorce. If she had, and if David failed to properly serve Linda's guardian, the court did not have jurisdiction and the case should have been dismissed long ago.
 {¶ 23} (2) Whether Stephanie has properly been named a real party in interest in the divorce case.
 {¶ 24} (3) Whether Linda had the authority to hire her divorce attorney or whether her divorce attorney was properly appointed by either Stephanie or the probate court.
 {¶ 25} (4) Why there was such a long delay between the adjudication of incompetency and anyone's even mentioning it to the domestic relations court.
 {¶ 26} In the meantime, this delay will also give the court and the parties a chance to fix any of the problems with this case that we have already discussed.
 {¶ 27} It appears to us that there is no way that the divorce case can proceed given the circumstances of this case. But the record is simply not clear enough for us to be certain. We must therefore send this case back to the domestic relations court and hope that it and the parties can clean it up.
 {¶ 28} We therefore grant the court's motion for an alternative writ and deny its motions for summary judgment and for judgment on the pleadings. And we likewise deny David's petition for a writ of prohibition and his motion for summary judgment.
Judgment accordingly.
Doan, P.J., and Sundermann, J., concur.
[1] See Evid.R. 201(B).
[2] See State ex rel. Merion vs. Court of Common Pleas (1940),137 Ohio St. 273, 277, 28 N.E.2d 641; State ex rel. Brady v. Pianka, 8th Dist. No. 85490, 2005-Ohio-377.
[3] See State ex rel. White v. Junkin, 80 Ohio St.3d 335, 336,1997-Ohio-340, 686 N.E.2d 267.
[4] See State ex rel. Enyart v. O'Neill, 71 Ohio St.3d 655, 656,1995-Ohio-145, 646 N.E.2d 1110.
[5] See State ex rel. Fogle v. Steiner, 74 Ohio St.3d 158, 161,1995-Ohio-278, 656 N.E.2d 1288.
[6] See State ex rel. Rogers v. McGee Brown, 80 Ohio St.3d 408,1997-Ohio-334, 686 N.E.2d 1126.
[7] State ex rel. Adams vs. Gusweiler (1972), 30 Ohio St.2d 326, 329,285 N.E.2d 22.
[8] See, e.g., State ex rel. Ballard v. O'Donnell (1990),50 Ohio St.3d 182, 553 N.E.2d 650.
[9] Civ.R. 4.2(C); see also, Newark Orthopedics, Inc. v. Brock (1994),92 Ohio App.3d 117, 634 N.E.2d 278; Civ.R. 17(B).
[10] See Newark Orthopedics, Inc. v. Brock (1994), 92 Ohio App.3d 117,634 N.E.2d 278.
[11] R.C. 2111.50; see, also, In re Goins, 7th Dist. No. 02 CA 163, 2003-Ohio-931.
[12] See Pace v. Pace (1986), 32 Ohio App.3d 47, 513 N.E.2d 1357.
[13] See State ex rel. Merion vs. Court of Common Pleas (1940),137 Ohio St. 273, 277, 28 N.E.2d 641; State ex rel. Brady v. Pianka, 8th Dist. No. 85490, 2005-Ohio-377.
[14] See Butler v. Butler (1984), 19 Ohio Misc.2d 1, 482 N.E.2d 998.
[15] See Pace v. Pace (1986), 32 Ohio App.3d 47, 513 N.E.2d 1357.
[16] See Civ.R. 17(B).
[17] See Boyd v. Edwards (1982), 4 Ohio App.3d 142, 446 N.E.2d 1151.