The STATE ex rel. ROBERTS

v.

WINKLER, Judge.

[Cite as *State ex rel. Roberts v. Winkler,* 176 Ohio App.3d 685, 2008-Ohio-2843.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–080075.

Decided June 13, 2008.

Robert R. Hastings and Chris McEvilley, for relator.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Scott M. Heenan, Assistant Prosecuting Attorney, for respondent.

---

CUNNINGHAM, Judge.

{¶ 1} In this original action, relator Lynn Roberts seeks a writ of prohibition to prevent the respondent, the Honorable Ralph E. Winkler, a judge of the Hamilton County Court of Common Pleas, from ordering Roberts into custody and resentencing him to serve the remaining portion of his five-year prison term. While his direct appeal was pending in this court, Roberts alleges, he had been selected for placement in an Intensive Program Prison ("IPP")—a 90–day bootcamp-like alternative to prison. He claims to have completed the program

and to have been released from prison, thus preventing the reimposition of sentence by Judge Winkler. Because the stipulated record does not support Roberts's contention that he was properly selected for an IPP and successfully completed the program, the writ is denied.

## Roberts's Conviction and Direct Appeal

{¶ 2} In March 2006, Roberts was indicted in case number B–0602578 for trafficking in heroin within 1,000 feet of a school, in violation of R.C. 2925.03(A)(2), punishable as a third-degree felony, and for possession of heroin, in violation of R.C. 2925.11(A), punishable as a fourth-degree felony. The case was assigned to Judge Winkler but was ultimately assigned to Visiting Judge Fred Cartolano for trial. Following a jury trial, Roberts was found guilty, and Judge Cartolano sentenced him to a five-year prison term for trafficking in heroin and to a one-and-one-half-year prison term for possession of heroin. The prison terms were to be served concurrently. Judge Cartolano also informed Roberts that he would be supervised for a three-year period of postrelease control after leaving prison.

{¶ 3} Roberts timely appealed from these convictions in appeal number C–060756. Roberts raised four assignments of error contesting the weight and the sufficiency of the evidence adduced to support his convictions and alleging that his convictions were the product of misconduct by the prosecuting attorneys. Oral argument was scheduled for July 31, 2007. On September 21, 2007, this court released its decision overruling each of Roberts's assignments of error, but sua sponte reversing the sentences on the ground that they had improperly been imposed for allied offenses of similar import, in accordance with our decision in *State v. Cabrales*.[1] We remanded the case to the trial court for it to enter a single conviction for either the trafficking offense or the possession offense.[2]

## Selection for an Intensive Program Prison

{¶ 4} According to his complaint, within one week of Roberts's September 2006 admission to the Ohio Department of Rehabilitation and Corrections ("ODRC"), department personnel had selected Roberts for an IPP, and while his direct appeal was pending in this court, Roberts had completed the program and had been released from prison. At no time during the pendency of his direct appeal did Roberts apprise this court of his participation in an IPP.

---

1.  1st Dist. No. C–050682, 2007-Ohio-857, 2007 WL 624995, affirmed by *State v. Cabrales*, 118 Ohio St.3d 54, 886 N.E.2d 181, 2008-Ohio-1625.

2.  *State v. Roberts*, 1st Dist. No. C–060756, 2007-Ohio-4882, 2007 WL 2741480, at ¶ 10.

{¶ 5} An IPP is "designed to provide an alternative to traditional incarceration for prisoners who meet" criteria for eligibility established by statute and by regulation.[3]  Prisoners in an IPP undergo "a highly structured and regimented daily routine which includes programming and counseling.  The program is designed to be a resocialization and learning period, with prisoners expected to participate in physical activity and self-enhancement interventions."[4]

{¶ 6} If a prisoner successfully completes an IPP, the ODRC may reduce the prisoner's stated prison term, or it may release him from imprisonment and place him under postrelease-control supervision.[5]  The ODRC may place eligible prisoners in an IPP only if "the sentencing court either recommends the prisoner for placement in the intensive program prison * * * or makes no recommendation on placement of the prisoner * * *."[6]  The ODRC may not place a prisoner in an IPP if the sentencing court disapproves the placement.[7]

{¶ 7} The sentencing court may signal its approval or disapproval of an IPP placement in its sentencing entry or in response to an inquiry from the ODRC.[8]  If the sentencing court has not made a placement recommendation in its sentencing entry, and the ODRC determines that a prisoner is eligible for an IPP, the department is required to notify "the sentencing court" at least three weeks prior to admitting the offender to the IPP.[9]  The court then has ten days to respond from the date of notice to disapprove the placement.  If there is no timely response from the sentencing court, the eligible offender may begin the IPP.[10]

{¶ 8} The sentencing entry prepared by Judge Cartolano in this case did not contain any recommendation for or against placement in an IPP.  Based upon documents attached as exhibits to his complaint, Roberts alleges that on Septem-

---

3.   Ohio Adm.Code 5120–11–02(C);  see also R.C. 2929.14(K) and 5120.032(B).

4.   Ohio Adm.Code 5120–11–06(A);  see also R.C. 5120.032(A).

5.   R.C. 5120.032(B)(1)(b);  see also R.C. 2929.01(CC) (defining "prison term" as "[a] stated prison term; [or a] term in a prison shortened by, or with the approval of, the sentencing court pursuant to section * * * 5120.032").

6.   R.C. 5120.032(B)(1)(a).

7.   See R.C. 5120.032(B)(1)(a);  see also R.C. 2929.14(K).

8.   See R.C. 2929.14(K) and 5120.032(B)(1)(a);  see also *State v. Lowery,* 11th Dist. No. 2007–T–0039, 2007-Ohio-6734, 2007 WL 4376377.

9.   R.C. 5120.032(B)(1)(a).

10.  See id.  ("If the sentencing court does not timely disapprove of the placement, the department may proceed with plans for it".)

ber 18, 2006, an ODRC classification specialist sent "Notice of Sentencing Court of Offender's Recommended Placement in the Intensive Program Prison" to the Hamilton County Court of Common Pleas, seeking approval or rejection of, or acquiescence in, the ODRC decision to place Roberts in an IPP. A copy of the notice, without an approval page, was also sent to the Hamilton County Prosecutor's Office. Roberts alleges that the classification specialist noted that Judge Cartolano was a visiting judge, contacted an unnamed person at the Hamilton County Clerk of Courts, and was told that Judge Frederick Nelson, a judge of the Hamilton County Court of Common Pleas who took no part in case number B–0602578, should receive the notice documents. Presumably the request for approval or rejection was actually delivered to Judge Nelson. Roberts asserts that the notice form was "forwarded either to [Judge] Cartolano or to [Judge] Winkler by Judge Nelson's courtroom staff." [11]

{¶ 9} Relying upon the classification specialist's affidavit attached as an exhibit to his complaint, Roberts alleges that no response was received to the ODRC's notice of placement. He asserts that he entered the IPP on April 18, 2007, and that he successfully completed the IPP on July 18, 2007, two weeks before oral argument in his direct appeal. Roberts claims that he was released from postrelease-control supervision on October 16, 2007.

### Requirements for Writ of Prohibition

{¶ 10} The Ohio Constitution confers on the courts of appeals original jurisdiction over writs of prohibition.[12] A writ of prohibition is a preventive measure that "is designed to prevent a tribunal from proceeding in a matter which it is not authorized to hear and determine." [13] A writ of prohibition is not a substitute for an appeal.[14] It should not issue to prevent an erroneous judgment in a case that the lower court is authorized to adjudicate.[15] Rather a writ of prohibition "tests and determines 'solely and only' the subject matter jurisdiction of the inferior tribunal." [16]

---

11. Complaint at 3.

12. See Section 3(B)(1)(d), Article IV, Ohio Constitution.

13. *State ex rel. Stefanick v. Marietta Mun. Court* (1970), 21 Ohio St.2d 102, 104, 50 O.O.2d 265, 255 N.E.2d 634; see also *State ex rel. Jones v. Suster* (1998), 84 Ohio St.3d 70, 73, 701 N.E.2d 1002.

14. See *State ex rel. Jones,* 84 Ohio St.3d at 77, 701 N.E.2d 1002.

15. See id. at 74, 701 N.E.2d 1002.

16. *State ex rel. Eaton Corp. v. Lancaster* (1988), 40 Ohio St.3d 404, 409, 534 N.E.2d 46, quoting *State ex rel. Staton v. Franklin Cty. Common Pleas Court* (1965), 5 Ohio St.2d 17, 21, 34 O.O.2d 10, 213 N.E.2d 164.

{¶ 11} Because a writ of prohibition should be issued with great caution and "only in cases of extreme necessity,"[17] the relator bears a three-part burden to demonstrate that he is entitled to the writ.[18] To prevail in this case, Roberts must establish that (1) Judge Winkler is about to exercise judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ will result in injury for which no other adequate remedy at law exists.[19]

{¶ 12} The Ohio Supreme Court has held that prohibition will lie even when an adequate legal remedy exists, "[w]here there is a total want of jurisdiction on the part of a court."[20] Thus, when a court is patently and unambiguously without jurisdiction to act, the availability or adequacy of a remedy is immaterial to the issuance of a writ of prohibition.[21] But absent that patent and unambiguous lack of jurisdiction, a court having general jurisdiction over the subject matter of an action has authority to determine its own jurisdiction, and the party challenging the court's jurisdiction has an adequate remedy at law by means of a direct appeal.[22]

{¶ 13} It is without question that Judge Winkler is about to exercise judicial power in this case by reimposing the remainder of the five-year prison term on Roberts. The stipulated record contains the trial court's entry ordering Roberts's return to the court for resentencing. And this court's mandate in appeal number C–060756 is for Judge Winkler to conduct a sentencing hearing and to impose sentence.[23] Roberts has satisfied his first burden for the writ to issue.

{¶ 14} But he cannot carry either of the two remaining burdens. The gravamen of Roberts's argument is that Judge Winkler lacks both the authority and the subject-matter jurisdiction to return him to prison, because he has served

---

17. *State ex rel. Downs v. Panioto,* 1st Dist. No. C–040784, 2005-Ohio-778, 2005 WL 433438, at ¶ 10, citing *State ex rel. Merion v. Court of Common Pleas* (1940), 137 Ohio St. 273, 277, 18 O.O. 40, 28 N.E.2d 641.

18. See *State ex rel. Enyart v. O'Neill* (1995), 71 Ohio St.3d 655, 656, 646 N.E.2d 1110; see also *State ex rel. Triplett v. Ross,* 111 Ohio St.3d 231, 2006-Ohio-4705, 855 N.E.2d 1174, at ¶ 19–20.

19. *State ex rel. Douglas v. Burlew,* 106 Ohio St.3d 180, 2005-Ohio-4382, 833 N.E.2d 293, at ¶ 9; *State ex rel. White v. Junkin* (1997), 80 Ohio St.3d 335, 336, 686 N.E.2d 267.

20. *State ex rel. Adams v. Gusweiler* (1972), 30 Ohio St.2d 326, 59 O.O.2d 387, 285 N.E.2d 22, paragraph two of the syllabus.

21. *State ex rel. Fogle v. Steiner* (1995), 74 Ohio St.3d 158, 161, 656 N.E.2d 1288; see also *State ex rel. Ney v. Allen* (1990), 64 Ohio App.3d 574, 577, 582 N.E.2d 46.

22. See *Goldberg v. Maloney,* 111 Ohio St.3d 211, 2006-Ohio-5485, 855 N.E.2d 856, at ¶ 21; see also *State ex rel. Jones,* 84 Ohio St.3d at 74, 701 N.E.2d 1002.

23. See App.R. 27.

his sentence, as modified by the ODRC pursuant to R.C. 5120.032, and therefore he may not be resentenced. As the Ohio Supreme Court has recently held, when a prisoner has already served his prison term, a court lacks the authority to resentence him, even to correct a void sentence.[24]

{¶ 15} But Judge Winkler argues that because the ODRC "did not properly place Roberts in an [IPP], he has not completed his stated prison term."[25] He specifically challenges whether the ODRC sent notice to the proper "sentencing court" three weeks before admitting Roberts to an IPP, as required by R.C. 5120.032(B)(1)(a). Judge Winkler asserts that the notice should have been sent to his chambers or to Judge Cartolano, and that neither of them received that notice. Roberts alleges on the other hand that the notice the ODRC sent to Judge Nelson and to the prosecutor's office was sufficient. He argues that any judge of the court of common pleas—"the sentencing court"—would have been the proper recipient of the ODRC's inquiry seeking approval, rejection, or acquiescence for Roberts's placement in an IPP.[26]

{¶ 16} Because Roberts bears the burden of proof in this original action,[27] it is incumbent on him to present evidence establishing that he had been properly selected for participation in an IPP and that he had successfully completed the program.

### *The Limited Evidence to Support Roberts's Claims*

{¶ 17} While other appellate courts and the Ohio Supreme Court make provision for the presentation of evidence by means of affidavits made on personal knowledge,[28] in the First Appellate District there are three means of presenting evidence in a prohibition action: an agreed statement of facts, a stipulation, or a deposition.[29] Absent the consent of this court, there is no provision for considering material attached to the complaint as evidence. Because of the summary nature of a writ of prohibition, while this court may try disputed facts presented in conformity with our local rule, it will not receive oral testimony or evidence by other unapproved means to resolve those factual

---

**24.** See *State v. Bezak,* 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961, at ¶ 18.

**25.** Response to Petition for Writ of Prohibition at 3.

**26.** R.C. 5120.032(B)(1)(a).

**27.** See, e.g., *State ex rel. Enyart,* 71 Ohio St.3d at 656, 646 N.E.2d 1110.

**28.** See, e.g., S.Ct.Prac.R. X(7); see also *State ex rel. Brady v. Blackwell,* 112 Ohio St.3d 12, 2006-Ohio-5878, 857 N.E.2d 1190 (interpreting Loc.R. 45 of the Eighth Appellate District).

**29.** See Loc.R. 2.

disputes. We note that App.R. 34(A) permits original actions in this court to be referred to a magistrate. But neither party has moved this court to appoint a magistrate to take evidence in this matter, nor has either moved to obtain consent of this court to consider other material as evidence in this case.

{¶ 18} On February 6, 2008, the parties filed in this court the sole evidentiary material properly introduced in this case—a "Stipulation As To The Record." The stipulation includes the complete record of Roberts's direct appeal and nine entries journalized by Judge Winkler between October 9, 2007, and January 29, 2008. They include Judge Winkler's entry ordering the sheriff to return Roberts from the Pickaway Correctional Institution for resentencing in response to this court's mandate in appeal number C–060756; a December 18, 2007, entry of continuance for the purpose of "re-sentence on Appellate Decision," with the notation "△ out" in the explanation box; and a January 15, 2008, entry ordering the ODRC to provide its records of "[a]ny and all notices of IPP eligibility that were sent to the sentencing court," of "[a]ny and all replies from the sentencing court," and of "[c]ertified mail receipts, showing receipt by the sentencing court."

{¶ 19} Unlike in other original actions brought in this court, in this case, neither party has moved for summary judgment or for dismissal on grounds of the sufficiency of the evidence.[30] Therefore, this court is to act as a trial court, weighing the evidence properly before us and rendering a judgment on the merits of the complaint.

{¶ 20} Roberts's ability to marshal evidence in his favor is severely constrained because the ODRC's responses to Judge Winkler's January 15, 2008, order are not part of the stipulated record. Although Roberts urges us to consider the documents attached to his complaint as the responses to that order, where the accuracy and the probative value of those documents is fiercely contested by Judge Winkler, we cannot fail to enforce our own local rule designed to avoid turning the proceedings for an original writ into a full-blown trial. This may seem a harsh application of the rules. But as we have previously noted, "[a] writ of prohibition should be issued only in cases of extreme necessity, because of the absence or inadequacy of other remedies and only when the right is clear; and it should never be issued in a doubtful or borderline case."[31] In this case, where the parties dispute the content and the meaning of documents attached to the complaint, but not included in the stipulated record, we must scrupulously adhere to our local rules governing evidence in an original action.

---

30. See, e.g., *State ex rel. Flynt v. Dinkelacker*, 156 Ohio App.3d 595, 2004-Ohio-1695, 807 N.E.2d 967 (granting summary judgment for the relator and granting a writ of prohibition).

31. *State ex rel. Downs*, 2005-Ohio-778, 2005 WL 433438, at ¶ 10, citing *State ex rel. Merion v. Court of Common Pleas* (1940), 137 Ohio St. 273, 277, 18 O.O. 40, 28 N.E.2d 641.

{¶ 21} The evidence properly before this court demonstrates only that by December 18, 2007, Roberts had been released by the ODRC. We cannot infer from that fact that Roberts was properly released pursuant to R.C. 5120.032(B). Because proper release is an essential factual prerequisite to Roberts's claim that Judge Winkler lacks the authority to reimpose a prison sentence, Roberts cannot carry his second burden for the writ to issue.

{¶ 22} And under the third burden, Roberts has an adequate remedy at law because he would be able to appeal an adverse ruling by Judge Winkler returning him to prison. R.C. 2953.08(A)(4) specifically provides for an appeal as of right from the imposition of criminal sentences that are entered contrary to law.[32] In light of this court's mandate in Roberts's direct appeal vacating the original sentence and ordering the trial court to impose sentence on only one of the two allied offenses of similar import, we cannot say that Judge Winkler patently and unambiguously lacks subject-matter jurisdiction over the case.[33] Absent being barred by the application of R.C. 5120.032, Judge Winkler is clearly authorized to adjudicate the matter.[34] And an erroneous exercise of that authority can be reviewed on direct appeal.

{¶ 23} We hold that Roberts has failed to demonstrate that the trial court is patently and unambiguously without jurisdiction to proceed with resentencing him. Consequently, we conclude that the trial court possesses the judicial authority to determine its own jurisdiction; Roberts can raise the issue that, under R.C. 5120.032, Judge Winkler lacks the authority to resentence him at the sentencing hearing. And if he is returned to prison, he may challenge that ruling in a direct appeal as of right.

{¶ 24} Therefore, the complaint is dismissed, and the alternative writ to stay the underlying proceedings, granted on January 30, 2008, is lifted.

Complaint dismissed.

PAINTER, J., concurs separately.

PAINTER, J., concurring.

{¶ 25} Though I agree that we should dismiss based on this record, if Roberts is able to establish his allegations in the trial court, it is obvious that the court would not be able to sentence him to any further time.

---

32. See also *State ex rel. Henry v. McMonagle* (2000), 87 Ohio St.3d 543, 721 N.E.2d 1051 (direct appeal of a criminal sentence is an adequate remedy at law precluding the issuance of a writ).

33. See *State ex rel. Eaton Corp.*, 40 Ohio St.3d at 409, 534 N.E.2d 46.

34. See *State ex rel. Jones*, 84 Ohio St.3d at 74, 701 N.E.2d 1002.

{¶ 26} The "sentencing court" referred to in R.C. 5120.032(B)(1)(a) is the Hamilton County Court of Common Pleas—not the chambers of any specific judge. Considering that retirements, substitutions, and visiting judges are all in the mix, it is unreasonable for the ODRC to try to figure out where to send the notices. It tried in this case and was evidently given incorrect information—though the error was understandable. One way to avoid this problem would be for all notices to be emailed or faxed to a central court office so court personnel could determine the proper judge.