[Cite as *Lacey v. Lenox Creek Condominium Assn.*, 2019-Ohio-1984.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 107094**

# DEBRA K. LACEY

PLAINTIFF-APPELLANT

vs.

# LENOX CREEK CONDOMINIUM ASSOCIATION, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-17-880762

**BEFORE:** Laster Mays, P.J., E.A. Gallagher, J., and Sheehan, J.

**RELEASED AND JOURNALIZED:** May 23, 2019

**ATTORNEYS FOR APPELLANT**

Larry S. Klein
Christopher J. Carney
Klein & Carney Co., L.P.A.
55 Public Square, Suite 1200
Cleveland, OH 44114

Paul W. Flowers
Louis E. Grube
Paul W. Flowers Co., L.P.A.
Terminal Tower, Suite 1910
50 Public Square
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEES**

Robert J. Koeth
Gallagher Sharp, L.L.P.
1501 Euclid Avenue, 6th Floor
Cleveland, OH 44115

Ann E. Leo
Koeth Rice & Leo Co., L.P.A.
1280 West Third Street
Cleveland, OH 44113

Michael Edward Lyford
Law Offices of John V. Rasmussen
6060 Rockside Woods Blvd., Suite 131
Independence, OH 44131

ANITA LASTER MAYS, P.J.:

{¶1}    Plaintiff-appellant Debra K. Lacey ("Lacey") appeals the trial court's grant of summary judgment in favor of defendants-appellees, Lenox Creek Condominium Association, Inc. ("Lenox") and Western Reserve Property Management ("Reserve") in a trip-and-fall   personal injury case.   We affirm the trial court's judgment.

## I.    Background and Facts

{¶2} For more than two years, Lacey resided in a condominium unit rented from defendants Donald and Anna Walencey.   Lenox owned the complex, and Reserve served as the property manager.

{¶3} On October 9, 2016, between 3:00 p.m. and 4:00 p.m., Lacey was walking her two dogs on separate four-to-six-foot-long leashes around the complex parking lot. Lacey observed her friend Roberta Mitchell ("Mitchell") drive up to the complex mailbox banks located about 50 feet ahead of her.   Lacey's attention was focused on Mitchell when she stepped into a pothole in the parking lot.   Lacey required surgery for a torn left medial meniscus and developed deep vein thrombosis as a result of the procedure. Lacey had never fallen in the parking lot before.

{¶4}    On May 23, 2017, Lacey filed a premises liability negligence action against the Walenceys,[1] Lenox, and Reserve.   On February 23, 2018, after the discovery period

---

[1] The Walenceys were dismissed without prejudice and are not parties to this appeal. Their cross-claim for indemnification against the other defendants became moot upon the dismissal and the trial court's finding in favor of appellees.   "A judgment for the defendant in a civil action, which judgment renders the defendant's third-party complaint for indemnification or contribution moot, is a final appealable order pursuant to R.C. 2505.02, and Civ.R. 54(B) is not applicable to such a

concluded, appellees moved for summary judgment on the grounds that the pothole was open and obvious and there were no attendant circumstances that would serve as an exception to the open-and-obvious doctrine. Lacey responded on March 8, 2018, and appellees replied on March 15, 2018.

{¶5} On April 5, 2018, the trial court granted the motion. The trial court held "[t]he pothole in the parking lot was open and obvious and no attendant circumstances that would warrant an exception were present." Journal Entry No. 103255783 (Apr. 5, 2018), citing *Seifert v. Great N. Shopping Ctr.*, 8th Dist. Cuyahoga No. 74439, 1998 Ohio App. LEXIS 5308 (Nov. 5, 1998). This appeal ensued.

## II. Assignment of Error

{¶6} The sole assignment of error before this court is that the trial court erred as a matter of law by granting summary judgment in favor of appellees. Lacey argues that genuine issues of material fact exist regarding whether: (1) the condition was open and obvious, (2) Reserve, as the property manager, has standing to assert the open-and-obvious defense, and (3) attendant circumstances were present that precluded application of the open-and-obvious doctrine in this case.

## III. Standard of Review

{¶7} We review a trial court's entry of summary judgment de novo, using the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105,

---

judgment." *Wise v. Gursky*, 66 Ohio St.2d 241, 242, 421 N.E.2d 150 (1981). *See also Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17, 21, 540 N.E.2d 266 (1989).

671 N.E.2d 241 (1996). Summary judgment may only be granted when the following are established: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and the conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in its favor. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978); Civ.R. 56(C).

{¶8} The party moving for summary judgment bears the initial burden of apprising the trial court of the basis of its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the nonmoving party's claim. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). "Once the moving party meets its burden, the burden shifts to the nonmoving party to set forth specific facts demonstrating a genuine issue of material fact exists." *Willow Grove, Ltd. v. Olmsted Twp.*, 2015-Ohio-2702, 38 N.E.3d 1133, ¶ 14-15 (8th Dist.), citing *Dresher*. "To satisfy this burden, the nonmoving party must submit evidentiary materials showing a genuine dispute over material facts." *Willow Grove* at ¶ 15, citing *PNC Bank v. Bhandari*, 6th Dist. Lucas No. L-12-1335, 2013-Ohio-2477.

## IV. Discussion

### A. Open-and-Obvious Doctrine

{¶9} To overcome summary judgment in this case, Lacey must establish that genuine issues of material fact exist regarding whether: (1) appellees owed Lacey a duty

of care; (2) appellees breached the duty; and (3) the breach was the proximate cause of Lacey's injury. *Bounds v. Marc Glassman, Inc.*, 8th Dist. Cuyahoga No. 90610, 2008-Ohio-5989, ¶ 10, citing *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 680, 693 N.E.2d 271 (1998).

{¶10} "Whether a duty [of care] exists is a question of law for the court to determine." *Bounds* at ¶ 10, citing *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989). There can be no legal liability in the absence of establishing the existence of a duty. *Bounds* at ¶ 10, citing *Jeffers v. Olexo*, 43 Ohio St.3d 140, 142, 539 N.E.2d 614 (1989). The "analysis ends and no further inquiry is necessary." *Bounds* at ¶ 10, citing *Gedeon v. E. Ohio Gas Co.*, 128 Ohio St. 335, 338, 190 N.E. 924 (1934).

{¶11} A landowner's duty to those entering their land varies depending on whether the individual is a trespasser, licensee, or business invitee. There is no duty owed to a licensee or trespasser "except to refrain from willful, wanton, or reckless conduct that is likely to" cause injury. *Skowronski v. Waterford Crossing Homeowners' Assn.*, 8th Dist. Cuyahoga No. 96144, 2011-Ohio-3693, ¶ 11, citing *Bae v. Dragoo & Assocs., Inc.*, 156 Ohio App.3d 103, 2004-Ohio-544, 804 N.E.2d 1007 (10th Dist.).

{¶12} The parties agree that Lacey was a business invitee at the complex. Appellees' responsibility to Lacey as a business invitee was to exercise "ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers." *Carlo v. Kohl's Dept. Stores*, *Inc.*, 8th Dist.

Cuyahoga No. 105725, 2017-Ohio-8173, ¶ 8, citing *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 480 N.E.2d 474 (1985).

**{¶13}** "A premises owner is obligated to warn invitees of latent or concealed dangers if the owner knows, or has reason to know, of hidden dangers." *Id.*, citing *Rogers v. Sears, Roebuck & Co.*, 1st Dist. Hamilton No. C-010717, 2002-Ohio-3304. Summary judgment may be granted "[w]here a hazard is not hidden from view or concealed and is discoverable by ordinary inspection." *Id.*, citing *Parsons v. Lawson Co.*, 57 Ohio App.3d 49, 566 N.E.2d 698 (5th Dist.1989). A business owner has no duty to warn of open-and-obvious dangers, acting as a complete bar to a claim of negligence. *Skowronski* at ¶ 21, citing *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088.

**{¶14}** Further,

[w]here reasonable minds could differ with respect to whether a danger is open and obvious, the obviousness of the risk is an issue for the jury to determine. *Klauss v. Marc Glassman, Inc*., 8th Dist. Cuyahoga No. 84799, 2005-Ohio-1306. A pedestrian using a public sidewalk is under a duty to use care reasonably proportioned to the danger likely to be encountered but is not as a matter of law required to look constantly downward. *Swiger v. Kohl's Dept. Store*, *Inc.*, 191 Ohio App.3d 629, 2010-Ohio-6230, 947 N.E.2d 232 (2d Dist.). "Attendant circumstances" may also divert the individual's attention from a hazard and excuse the failure to observe it. *See Hissong v. Miller*, 186 Ohio App.3d 345, 2010-Ohio-961, 927 N.E.2d 1161 (2d Dist.). Moreover, as explained in *Hissong*, "[t]he existence and the obviousness of a danger which allegedly exists on a premises is determined by a fact-specific inquiry and must be analyzed on a case-by-case basis." (Citation omitted.)

*Skowronski,* 8th Dist. Cuyahoga No. 96144, 2011-Ohio-3693, at ¶ 22.

**{¶15}** "[I]t is incumbent upon the plaintiff to identify or explain the reason for the fall." *Id.* at ¶ 14, citing *Stamper v. Middletown Hosp. Assn.*, 65 Ohio App.3d 65, 582 N.E.2d 1040 (12th Dist.1989). The testimony may also be provided by "'outside witnesses.'" *Id*. at *id*.

**{¶16}** Several witnesses were deposed in this case. According to Reserve Property Manager Robert Swope ("Swope"), Lenox contracted with Reserve to act as an agent for Lenox to provide repair and maintenance services for the complex. The contract included an indemnification clause that protected Reserve for acts committed within the scope of the contractual authority.

**{¶17}** Due to the size of the five-to-six acre complex, Reserve relied on unit owners to report service needs in addition to Reserve's weekly visual inspections. Reserve made repair recommendations to the Lenox board of directors whose approval was required for expenditures exceeding $1,000.

**{¶18}** Semiannual inspections of the complex were also conducted. Though he did not keep inspection records, Swope walked or drove around the complex on a weekly basis to inspect the walkway and driveway areas. Repairs were routinely conducted by third-party contractor Aspen Construction L.L.C. ("Aspen"). Swope had not seen the pothole prior to the date of the incident and, after the incident, he promptly took photographs and notified Aspen to repair the pothole. Swope did not consider the pothole to be a trip hazard because it was clearly observable. Swope was not aware of any other trip-and-fall occurrences at the complex.

**{¶19}** Aspen employed a subcontractor to repair the pothole with asphalt cold patch. According to Aspen Project Manager Richard Takacs ("Takacs"), the pothole was approximately eight to nine inches in length, four inches wide and one-half inch deep. Potholes exceeding one-inch in depth required a more extensive repair procedure and could not be repaired with asphalt cold patch. Aspen also repaired several other small potholes observed during the visit.

**{¶20}** Takacs explained that potholes can form and expand quickly due to inclement weather including heavy rain and water accumulation. Potholes also form or are impacted by temperature changes, traffic, landscaping operations, and snow plows.

**{¶21}** Mitchell, a resident owner in the complex for about three years, met Lacey while both were walking their dogs. On the day of the incident, Mitchell drove past Lacey who was walking her dogs near the complex mailbox banks located shortly beyond the community center. Mitchell parked, exited the car, and retrieved her mail. She could not see Lacey from the mailbox area and did not see Lacey fall.

**{¶22}** As Mitchell returned to her car, she saw Lacey on the ground and helped her to her feet. Mitchell testified that she tripped over the same pothole approximately two months earlier, and again a month prior to the incident when she was walking her dog one night. The pothole was located between two of the mailbox banks in front of one of the garages. Mitchell described the hole as "relatively sufficient" and "small enough

that you didn't always notice it, but big enough [to notice] if you stepped in it." Mitchell Deposition, at 22-24. Mitchell did not report the pothole to appellees.

**{¶23}** Lacey argues that appellees had constructive knowledge of the pothole based on *Beck v. Camden Place at Tuttle Crossing*, 10th Dist. Franklin No. 02AP-1370, 2004-Ohio-2989. *Beck* determined that a landowner is "charged with constructive knowledge of defects which would have been revealed by a reasonable inspection of the premises." *Id.* at ¶ 21, citing *State Farm Mut. Auto. Ins. Co. v. Chatham Dev. Corp.*, 10th Dist. Franklin No. 94APE08-1243, 1995 Ohio App. LEXIS 2398 (June 6, 1995).

**{¶24}** Lacey posits that appellees failed to reasonably inspect the complex because Swope was only on-site 20 hours per week and there were no written inspection records. However, Lacey also testified that she walked her dogs through the complex daily for more than two years and never tripped on any potholes or defects in the driveways or walking areas of the complex.

**{¶25}** It is undisputed that appellees did not have actual knowledge of the pothole. Whether or not appellees had constructive knowledge or should have known of the pothole is not relevant because the pothole was open and obvious as a matter of law. "When a danger is open and obvious, a premises owner owes no duty of care to individuals lawfully on the premises." *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 13, citing *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589 (1968).

**{¶26}** "By focusing on the duty prong of negligence, the rule properly considers the nature of the dangerous condition itself." *Id.* "[T]he owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Id.* at ¶ 5, citing *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644, 597 N.E.2d 504 (1992).

**{¶27}** As this court has previously stated,

> The question of whether a danger is open and obvious is an objective one. *Abdelshahid v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 102109, 2015-Ohio-2274, ¶ 25, citing *Goode v. Mt. Gillion Baptist Church*, 8th Dist. Cuyahoga No. 87876, 2006-Ohio-6936, ¶ 25. The fact that a plaintiff was unaware of the danger is not dispositive of the issue. *Id.* Rather, the court must consider whether, in light of the specific facts and circumstances of the case, an objective, reasonable person would deem the danger open and obvious. *Id.*; *Carpenter v. Marc Glassman, Inc.*, 124 Ohio App.3d 236, 705 N.E.2d 1281 (8th Dist.1997).

*Butler v. Cleveland Clinic*, 8th Dist. Cuyahoga No. 105457, 2018-Ohio-93, ¶ 11.

**{¶28}** The pothole was approximately eight to nine inches in length, four inches wide and one-half inch deep based on the evidence in this case. Lacey testified that the incident occurred during the afternoon, and she did not identify any lighting or weather issues. Lacey did state that she was walking her dogs and was not paying attention. We find that viewed in a light most favorable to Lacey, "an objective, reasonable person would deem the danger open and obvious." (Citations omitted.) *Id.*

**B.    Attendant Circumstances**

**{¶29}** Lacey also urges that attendant circumstances existed that distracted her attention from the hazard excuses her failure to observe it, requiring a case-by-case,

fact-specific analysis.  *Skowronski,* 8th Dist. Cuyahoga No. 96144, 2011-Ohio-3693, at ¶ 22, citing *Hissong*, 186 Ohio App.3d 345, 2010-Ohio-961, 927 N.E.2d 1161.

**{¶30}** In *Bounds,* 8th Dist. Cuyahoga No. 90610, 2008-Ohio-5989*,* we considered whether attendant circumstances existed that created a "genuine issue of material fact as to whether a danger was open and obvious."  *Id*. at ¶ 24, citing *Quinn v. Montgomery Cty. Edn. Serv. Ctr*., 2d Dist. Montgomery No. 20596, 2005-Ohio-808; *Collins v. McDonald's Corp*., 8th Dist. Cuyahoga No. 83282, 2004-Ohio-4074.  "Attendant circumstances" include "all facts relating to the event, such as time, place, surroundings or background, and the conditions normally existing that would unreasonably increase the normal risk of a harmful result of the event."  *Id*., citing *Menke v. Beerman*, 12th Dist. Butler No. CA97-09-182, 1998 Ohio App. LEXIS 868 (Mar. 9, 1998).

**{¶31}**  According to the record, Lacey's view was partially blocked by the antics of the two dogs, and she admitted that she was distracted when she saw Mitchell at the mailboxes.  Lacy argues that these events serve as attendant circumstances because they were reasonably foreseeable.  We disagree.  A landlord is not required to act as an insurer of the safety of its invitees.  *Howard v. Meat City, Inc.*, 3d Dist. Allen No. 1-16-32, 2016-Ohio-7989, ¶ 10, citing *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, ¶ 11.  *See also Carlo v. Kohl's Dept. Stores*, *Inc*., 8th Dist. Cuyahoga No. 105725, 2017-Ohio-8173, ¶ 9.

**{¶32}** A business invitee also has a duty to take reasonable precautions to avoid dangers. *Bounds* at ¶ 19*,* citing *Brinkman v. Ross*, 68 Ohio St.3d 82, 84, 1993-Ohio-72, 623 N.E.2d 1175. "[I]t is [also] incumbent upon the plaintiff to identify or explain the reason for the fall." *Stamper*, 65 Ohio App.3d at 67, 582 N.E.2d 1040. Lacey admitted that she was not paying attention when she fell. The fall occurred during daylight hours between 3:00 p.m. and 4:00 p.m. Lacey did not state that the weather conditions were poor that day. "[T]he attendant circumstance must be 'an unusual circumstance of the property owner's making.'" *Haller v. Meijer, Inc.*, 10th Dist. Franklin No. 11AP-290, 2012-Ohio-670, ¶ 10, quoting *McConnell v. Margello*, 10th Dist. Franklin No. 06AP-1235, 2007-Ohio -4860, ¶ 17, citing *Lang v. Holly Hill Motel, Inc.*, 4th Dist. Jackson No. 06CA18, 2007-Ohio-3898.

**{¶33}** Viewed in a light most favorable to Lacey as the nonmoving party, there are no facts before this court that support the presence of attendant circumstances sufficient to require a reversal of summary judgment in this case.

### C.    Agent or Independent Contractor

**{¶34}** Lacey states that the open-and-obvious defense is not available to Reserve as an independent contractor. "[A]n independent contractor who creates a dangerous condition on real property is not relieved of liability under the [open- and-obvious doctrine]" and liability must be analyzed by first determining the existence of a duty of care and then considering whether the contractor is exonerated by the "open and obvious

dangers." *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 645, 597 N.E.2d 504 (1992).

**{¶35}** Appellees counter that Reserve served as the exclusive managing agent of Lenox, a condominium association, for the common areas of the complex so that Reserve may step into its shoes and exercise the defense. We find that appellees' position has merit.

**{¶36}** The Ohio Supreme Court has determined that:

> "The relation of principal and agent or master and servant is distinguished from the relation of employer and independent contractor by the following test: Did the employer retain control, or the right to control, the mode and manner of doing the work contracted for? If he did, the relation is that of principal and agent or master and servant."

*Councell v. Douglas*, 163 Ohio St. 292, 295, 126 N.E.2d 597 (1955), quoting *Miller v. Metro. Life Ins. Co.,* 134 Ohio St. 289, 291-292, 16 N.E.2d 447 (1938).

**{¶37}** According to the Ohio Condominium Act, R.C. Chapter 5311, a condominium association may hire a managing agent to fulfill the duties of the association subject to the control of the board of directors. R.C. 5311.08(B)(1)(h). *See also* R.C. 5311.01(M) defining "condominium instruments" to include "any contracts pertaining to the management of the condominium property" and R.C. 5311.23(D) providing that an action for failure to comply with condominium instruments may be commenced by the condominium association "in its own name, in the name of the board of directors, or in the name of the association's managing agent." *Akerstrom v. 635 W. Lakeside, Ltd.*, 2018-Ohio-98, 105 N.E.3d 440, ¶ 12 (8th Dist.), citing R.C. 5311.23(D).

**{¶38}** The December 10, 2015 Condominium Management Agreement between Lenox and Reserve appoints Lenox to act as the managing agent pursuant to Article II of the Declaration of Condominium Ownership. Lenox appoints Reserve as the exclusive agent to manage the common elements of the complex "subject at all times to the direction and control" of Lenox. The general delineation of duties specifies that the activities are subject to the direction and control of Lenox. Included is the authority for Reserve to "hire, supervise, and discharge" personnel hired by Reserve on behalf of Lenox to fulfill the duties.

**{¶39}** Reserve's activities are conducted under the direction and control of Lenox. The duties include the: (1) collection of condominium assessment fees from unit owners, (2) receipt of other payments on behalf of Lenox for deposit into a trust account, and (3) preparation of checks for board signature to disburse sums payable by Lenox. Lenox reimburses Reserve for all office expenses relating to the agency. Lenox also indemnifies Reserve for negligent acts or omissions relating to the exercise of its duties, including personal injuries, and Lenox secures the insurance for Reserve's activities by naming Reserve as an additional insured on the Lenox insurance policies.[2]

**{¶40}** The terms of the November 1, 2016 landscaping and snow plowing agreement contained in the record provide further insight into Reserve's status as an agent. The agreement is between Lenox and the landscaping company. The

---

[2] Willful acts of misconduct or fraud are not indemnified.

landscaping company is specifically identified as an independent contractor. The agreement lists the basic scope of work and contract price for the services.

{¶41} Payment for optional work projects requires written authorization from Reserve as the agent of Lenox prior to performance. The contract is indicative of an arms-length transaction with the contractor bearing responsibility for its own acts or omissions and indemnifying Lenox and Reserve. The contractor is responsible for providing proof of insurance.   The contractor's invoices are to be directed to Lenox in care of Reserve.

{¶42}   A review of Ohio law, as well as the cases presented by the instant parties, did not reveal a case specifically addressing whether a condominium managing agent is an independent contractor, perhaps because the designation is self-explanatory and contemplated by the Ohio Condominium Act.   In fact, a review of premises liability cases against a condominium association and its managing agent involving business invitees and the open-and-obvious defense reveals application of the doctrine to both parties without a discussion of legal status.

{¶43} Examples of such cases include:   *Brandimarte v. Packard*, 8th Dist. Cuyahoga No. 67872, 1995 Ohio App. LEXIS 2095, 1 (May 18, 1995), finding that a condominium association, its managing company, and cleaning company were entitled to the protection of the open-and-obvious doctrine against a business invitee.   *Hurst v. Carriage House W. Condominium Owners Assn.*, 2017-Ohio-9236, 102 N.E.3d 1071 (6th Dist.), finding that the condominium   association and managing agent were entitled to

the open-and-obvious defense; and *Ervin v. Case Bowen Co.*, 10th Dist. Franklin No. 07AP-322, 2008-Ohio-393, affirming the grant of summary judgment in favor of the condominium managing agent in a negligence action due to the open-and-obvious nature of natural accumulations of snow.

{¶44}    Viewed in a light most favorable to Lacey as the nonmoving party, we find that the open-and-obvious defense is available to Reserve as the agent of Lenox.

## V.    Conclusion

{¶45}    The trial court's judgment is affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
MICHELLE J. SHEEHAN, J., CONCUR